CLAIBORNE BOWMAN, Adm'r, &c., *v.* J. P. O'REILLY et al.

1. CHANCERY: PLEADING AND PROOF MUST CORRESPOND.—It is a well settled rule of equity pleading, that every fact essential to the plaintiff's title, and to maintain his bill, and to obtain the relief sought, must be stated in the bill; and that no proof can be offered, and no relief granted, upon matters not charged in the bill;

and hence, if the equity of complainant's bill be, that the property sought to be recovered was purchased with his own money, he is not entitled to relief upon proving that it was purchased with the funds of a partnership of which he was a member.    See Story, Eq. Pl. § 257.

2. PARTNERSHIP : INTEREST OF COPARTNER: ACCOUNT.—The interest of a co-partner is not his *pro rata* share of any particular portion of the partnership property, but his due proportion of the balance of the assets, after a general account, embracing the whole partnership business, has been stated, between him and his associates ; and, therefore, a decree dividing the proceeds of a portion of the property between the co-partners, without a general account having been taken, will be erroneous.

3. TRUSTS.—A resulting trust in land will not be created in favor of one whose funds have been used in paying the purchase-money, where the land was purchased on a credit.

APPEAL from the Superior Court of Chancery.    Hon. Charles Scott, chancellor.

Fyler and Henderson filed their bill in the Superior Court of Chancery, to enforce the vendor's lien upon a certain tract of land, sold by them, on a credit, to Nicholas O'Reilly, in his lifetime; the administrators of Nicholas O'Reilly, and also his heirs, (who were the children of his two deceased brothers, Philip O'Reilly and Edmund O'Reilly,) were made parties defendants to the bill. The right to enforce the vendor's lien for the payment of the balance of the purchase-money was established, and the controversy was between the children of P. O'Reilly on the one hand, the administrator of Nicholas, and the children of Edmund O'Reilly on the other; the estate of the latter having been declared insolvent.

Jas. P. O'Reilly, and the other children of Philip O'Reilly, filed their cross-bill against the complainants and their co-defendants, in which they alleged in substance : That at the time said Nicholas purchased the lands mentioned in the *complainant's* bill, he had no means to pay for them; and that all the money that had been paid on account of said purchase was derived from and belonged to the estate of Philip O'Reilly, their father, and from the proceeds of eighty-eight bales of cotton, produced mostly, if not entirely, by slaves belonging to his estate.    The prayer was, that the representatives of said Edmund O'Reilly be compelled to contribute a sum equal to that paid by the assets of Philip O'Reilly's estate, or

be enjoined from setting up any claim to the land; or that if the court should decree a sale of the land for the balance of the purchase-money that might be due, that the surplus, if any, should be applied first to the re-payment of the advance so made out of Philip O'Reilly's estate, and that the remainder be equally divided among the representatives of Edmund O'Reilly and complainants in the cross-bill.

The court decreed that the surplus of the proceeds of the sale of the land, after the payment of the purchase-money, "be appropriated ratably among the distributees of the deceased partners, Philip, Edward, and Nicholas O'Reilly, *per stirpes.*

Bowman, the administrator of Nicholas, and Edmund O'Reilly, appealed.

It is unnecessary to set out more of the proof than is stated in the opinion of the court.

*Q. D. Gibbs,* for appellant.

*Yerger* and *Rucks,* for appellees.

HANDY, J., delivered the opinion of the court.

This was a bill filed in the Superior Court of Chancery by Fyler and Henderson, against the administrator of Nicholas O'Reilly, to enforce their vendor's lien upon a tract of land purchased of them by O'Reilly in his life time. The heirs of O'Reilly were also made defendants, including the children of his brother, Philip O'Reilly, deceased, who filed their answer and cross-bill, alleging that so much of the purchase-money of the land as had been paid by Nicholas O'Reilly, was paid by money which belonged to the estate of Philip O'Reilly, and by the proceeds of the labor of slaves belonging to that estate; and praying that any surplus of money arising from the sale of the land, after the satisfaction of the balance due on the vendor's lien, should be applied to the payment of the money due the estate of Philip O'Reilly, on account of the use of his money and means in making payments of the purchase-money. The administrator of Nicholas O'Reilly answered the cross-bill, denying its allegations, and denying the Right of Philip O'Reilly's representatives to the relief sought by their cross-bill.

Under this state of pleadings, proof was taken to show that the money was paid by means of cotton grown on a plantation carried on by the firm of N. & E. O'Reilly & Co., in which Philip O'Reilly was said to have an interest. But the proof is not sufficient to show an interest in the firm as a co-partner; and it appears that a suit was brought by Philip O'Reilly's administrator against Nicholas O'Reilly's administrator, for the hire of slaves of the farm, and used on the plantation during the time when the cotton which was applied to the payment of the purchase-money of this land was raised, and a judgment was recovered for upwards of $6000. It is not shown that the money was paid by the individual means of Philip O'Reilly.

The chancellor decreed that the surplus of the proceeds of the sale, after paying the vendor's debt, should be distributed *per stirpes* among the distributees of Philip, Nicholas, and Edmund O'Reilly—and from this decree the administrator of Nicholas O'Reilly and of Edmund O'Reilly appeals.

It is clear that the decree cannot be sustained. It appears to be founded on the idea that there was a partnership in planting, between the three brothers, and that the means of the firm were used by Nicholas O'Reilly, in making the payments upon the purchase-money of the land. Conceding this to be true in point of fact, it will not sustain the decree, for several reasons.

1. The cross-bill does not set up a partnership. The charge is, that the money was paid by means belonging to Philip O'Reilly, and not by the application of partnership funds in making the purchase. Under such an allegation, it was not proper to proceed on evidence showing that the transaction was to be governed by the rules applicable to partnership affairs; for it is a well established rule of pleading in equity, that every fact essential to the plaintiff's title to maintain the bill and obtain the relief sought, must be stated in the bill; and that no proof can be offered, nor can relief be granted, upon matters not charged in the bill. Story, Eq. Pl. § 257.

2. Neither the pleadings nor the proofs show any ground for treating this land, or the proceeds of its sale, as partnership property. If the money was paid by partnership means, the cross-

bill does not seek an account of the partnership affairs, nor does the proof show what would be the state of accounts between the partners. No proof whatever was taken upon that point, nor was any account ordered or taken. Under such circumstances, it was therefore palpably erroneous to decree that the alleged partner was entitled to any interest in the avails of the property.

But if we regard the purchase-money as having been paid by the individual means of Philip O'Reilly, according to the allegations of the cross-bill, the decree is equally indefensible. For it would merely present the case of a purchaser who had used the means of another in purchasing land for himself, which, though it would render him a general debtor for the money used, would create no lien upon the property purchased, in favor of the person whose money had been used.

The decree is reversed, and the cross-bill dismissed.