R. G. MEACHAM ET AL. *v.* A. C. EDMONSON ET AL.

1. HOMESTEAD EXEMPTION. *Abandonment. Removal out of State.*
   The debtor's removal with his family from the State, pending an appeal from a chancery decree awarding him $1,500, in lieu of his homestead exemption, out of the proceeds of the sale of his land under a creditor's bill, does not forfeit his right to the money.

2. SAME. *Descent of proceeds of sale. Administrator and heir.*
   On the death of the exemptionist and his wife, the right to such money vests, not in his administrator, but in his children, who are entitled thereto on affirmance of the decree, although still out of the State.

3. SAME. *Sale or disposition by exemptionist. Code 1871, § 2143.*
   The facts that the debtor petitions the court, after the sale, for either his homestead or its price, and the creditor, to sustain the sale, concedes that, if entitled to a homestead, he should be paid out of the proceeds, and the court decides that he is entitled to the money, constitute a disposition of the homestead within the equity of Code 1871, § 2143, which is an enlargement of the act of Feb. 16, 1867 (Acts 1866–67, p. 221), permitting a sale of the homestead, and shielding the proceeds from creditors.

APPEAL from the Chancery Court of De Soto County.
Hon. J. C. GRAY, Chancellor.
*Shands & Johnson,* for the appellants.

1. This litigation began ten years ago, and has descended from father to son. In 1868 the land was sold, and Meacham turned out, without any money paid him in lieu of the homestead, as required by law. Code 1857, pp. 529, 530. Meacham waived none of his homestead rights. That he was entitled to the money out of the fund is clear on principle, *Moseley* v. *Anderson,* 40 Miss. 49; and, having been already decided in this case, *Edmonson* v. *Meacham,* 50 Miss. 34, is *res adjudicata,* and cannot now be controverted by the creditors.

2. But it is said that he abandoned his homestead and forfeited his right. The complainants, having evicted him, and

sold his home and retained the money for six years, — wrongfully as decided in this case, *Edmonson* v. *Meacham, ubi supra*, — cannot be heard to say that the consequence of their acts was an abandonment by Meacham.    When his home was sold, and he turned adrift in the world, he had no right except to sue for the $1,500.    That claim he has never abandoned, but, until his death, always asserted.

3. The homestead cannot be disposed of without the wife's consent.    Acts 1873, p. 78.    Meacham's taking his family out of the State does not show such consent.    *Neam* v. *Campbell*, 3 Law & Eq. Rep. 140.    The wife can make no contract, 1 Bishop on Married Women, § 39 ; is not liable for crimes committed in her husband's presence, 1 Bishop on Criminal Law, § 358.    Her deed, unless acknowledged out of his presence, is void.    *Allen* v. *Lenoir*, 53 Miss. 321.    To hold that she abandons her right by going with her husband is contrary to analogy, reason and law.    Smyth on Homestead and Exemptions, § 280.

4. That Meacham left the State was no forfeiture.    Deprived of his home, aged, poor and oppressed by his creditors, he was forced to accept the support offered on condition of his removal to Arkansas.    His accepting the alternative of going there to live, rather than remain here to die, was no more an abandonment than if his creditors had kidnapped him and carried him there.    Will they be allowed to turn to their advantage the wrongs which they have done the father to deprive his children of their inheritance ?    Such a result would be against the spirit and policy of the exemption law, and contrary to the better feelings of the human heart and a cultivated sense of right and justice.    The homestead may be left, and the family remain away for years without abandonment, so long as it is regarded by them as their home, and they have the intention of again occupying it.    *Campbell* v. *Adair*, 45 Miss. 170 ; Smyth on Homestead and Exemptions, § 282, and authorities cited, § 278, note 2, and authorities cited ; 1 Wash. on Real Prop. 326, 373.

5. If these grasping men can first wrest from the parent his homestead, in the teeth of the statute and the decision of the highest tribunal in the State ; force the family, by poverty caused by their unjustifiable proceeding, to go away, and then, on the ground of their absence, obtain the inheritance, — it

would be well to reconsider the terms of praise bestowed at times on the exemption laws as in 4 Cal. 26 ; 28 Vt. 674 ; 1 Iowa, 144 ; and *Franklin* v. *Coffee*, 18 Texas, 413 ; and style them, as they would become, a snare and a delusion, a thing of the imagination, which has no real existence against the machinations of wealthy, litigious and unpitying creditors.

*Harris & George*, for the appellees.

1. The homestead is held by the tenure of citizenship. One cannot commence litigation for the homestead, and, pending that litigation, abandon the State and take up his residence in another State, continue the litigation and reap the fruits of it, to be expended in another State. It matters not whether the removal from the State occurred before, during or after the litigation ; removal destroys the right, and subjects the property to the claims of creditors. The election to take the value of the homestead in money cannot alter the rule. There seems to be no doubt that the removal in this case was designed to be permanent. It was actually a clandestine fleeing from the State with his family and effects. There was no return, and no evidence of an intention to return. He established himself in Arkansas. The case must be decided by the rules of law, and not by the emotions, as the opposing counsel would seem to suppose. *Pennington* v. *Seal*, 49 Miss. 518 ; *Lessley* v. *Phipps*, 49 Miss. 790.

2. Certain conditions must exist to enable a party to enjoy the homestead right. The party must be the head of the family. It must be the home of the family. A man may lose his wife and children by dire misfortune. He may leave his country, for his country's good or his own. He may be driven from it by the persecution of creditors or other malign influences. Yet it is the fact of abandonment, and not the reason for it, that is to be alone looked to. *Moseley* v. *Anderson*, 40 Miss. 49 ; *Carpenter* v. *Brownlee*, 38 Miss. 200.

3. The widow, succeeding to the homestead under certain statutes takes in the character of heir. The domicile of the wife is necessarily determined by that of the husband. No consent of hers is necessary to an abandonment. Smyth on Homestead, p. 283 *et seq.* We cannot hold this to be equivalent to a sale without resorting to a fiction. The debtor is allowed to sell, in order to buy another homestead to be holden as such.

It is only personalty, so known, that he may carry out of the State.   Code, §§ 2135, 2143, 2144.

SIMRALL, C. J., delivered the opinion of the court.

In 1872, the Chancery Court sustained the claim of H. B. Meacham to $1,500, part of the price obtained by the commissioner at the judicial sale, in lieu of the homestead exemption.   The creditors appealed.   In June, 1874, this court sustained the right of Meacham, but remanded the cause, to have it ascertained whether the allowance of the $1,500 was in excess of the value of the homestead.   *Edmonson* v. *Meacham*, 50 Miss. 34.   Pending the appeal, and about five or six months before the final adjudication, Meacham, with his family, consisting of a wife and several small children, removed to Arkansas.   After the cognizance of the Chancery Court was resumed, the complainants, appellees in this court, filed a supplemental bill, alleging that the removal of Meacham and family worked in law a forfeiture of his right to the money, which was still in the hands of the commissioner, and insisting that it should be paid over to them on their judgment. Meacham and his wife had died in August, 1874, in Arkansas, and their children, the heirs-at-law, all of whom, except one, R. G. Meacham, were minors, were made defendants.   A demurrer to the bill was overruled ; and, on final hearing, the relief sought by the complainants was granted.   The contestation resolves itself into the inquiry, whether abandonment and removal from the homestead, and the consequences which attach to that act, are pertinent to this case, as made in the pleadings and proof.   Meacham with his family had been actually ejected from the premises by the purchaser at the judicial sale, and was out of possession when he preferred his claim to the homestead or to its value.   The fund was still in the hands of the commissioner, subject to the control of the court.   The controversy in that branch of the litigation was as to Meacham's right.   Meacham was content, if his claim was allowed, to accept a commutation in money in lieu of the domicile and land.   The creditors were willing, if the court established his right, that he should be compensated out of the sale-money, and acquiesced in the assumption that the entire fee of the estate had been offered to bidders, and that the price paid

was its fair worth. The removal by Meacham from his home was not in any proper sense an abandonment of his rights: he was turned out by the purchaser. Very quickly he brought his claim before the court, either for an assignment of his homestead exemption, or for its equivalent in value out of the sale-money. He was satisfied with the decree. The creditors appealed, not because the money was allowed instead of the homestead itself, but in order to controvert in this court his right to the one or the other. The displacement of Meacham and his family from the premises was the act or procurement of the creditors, the appellees. It was settled by the decree of the Chancellor and the judgment of this court that his absence from the premises and residence elsewhere, under such circumstances, did not impair or affect his right.

But it is said that his removal to Arkansas in 1874 wrought a forfeiture of the money. If we understand the argument of counsel for the appellees, it is that nothing had occurred up to that time to disparage his rights, but that the removal to Arkansas had *ipso facto* caused a forfeiture. For two years after the Chancellor had decreed in his favor he remained in the neighborhood; until, reduced to abject poverty, without money or credit, supported in part by the bounty of a brother-in-law, resident in Arkansas, at whose solicitation, in order the better to provide for the wants of himself and family, he moved to that State. It is highly probable from the testimony, that if the homestead exemption had been assigned to him, or its value had been promptly paid, he would have remained in this State.

There are one or more provisions of statute law important to be considered in this connection. Sect. 2143 Code 1871 allows the owner of exempt property, real and personal, to dispose of it, as any other property; and it shall not, by such disposition, become liable to the debts of such owner. This was an enlargement of the act of Feb. 16, 1867 (Acts 1866–67, p. 221), which permitted the sale of the homestead for reinvestment in another, and shielded the money from creditors for twelve months, with the same immunity which pertained to the homestead. The object of this legislation was to relax the rule laid down in *Whitworth* v. *Lyons*, 39 Miss. 467, that, if the insolvent debtor sold his homestead, it

became liable in the possession of the vendee to antecedent judgments.

Looking through the form of the transaction to ascertain the substantive thing which was accomplished, was there not in reality a sale of the homestead to the purchaser under the decree? Recurring to the first appeal, *Edmonson* v. *Meacham*, *ubi supra*, it will be observed that the creditors unmasked Meacham's fraud in paying for the land and placing the title in his wife and children, and resisted his pretension to a homestead, because he never was the *owner* of the property. This ground of objection was declared to be untenable, and part of the price, instead of land, was awarded to Meacham. The entire estate was exposed to sale under the decree. There was no reservation on account of the homestead exemption. It seems to have been acquiesced in by all the parties to the litigation that the price bid was the value of the entire estate; and that, instead of a separation of the homestead and a resale, the sale should stand, and Meacham, if his claim was good, should be compensated in money. That result was satisfactory to Meacham, for he was content with the decree, and did not appeal. If the appellees, in 1872, at the date of the decree, had paid to Meacham the value of his homestead, there cannot be a doubt that the entire interest in the property would have been in the purchaser under the decree, and the homestead right have been satisfied. He presented his demand in the alternative form, " Give me the homestead, or give me the price." Being content with the price, the purchaser did not complain; nor could the creditors, for, with that subtracted, the residue was the measure of their demands on the property. Meacham's proportion of the price had never been paid over to him, because its amount had not been precisely determined before his death. His children and heirs, in this suit, insist that the value of the homestead, $1,500, retained from the creditors of their father, shall be paid over to them. It is agreed that it was worth that sum.

We do not think that abandonment or removal out of the State raise serious obstacles to the right of the heirs to the money. We regard the money in question as the unpaid price of the family homestead. Whatever abandonment of the homestead has occurred was by reason of an eviction from

it; and when the Chancery Court, with the consent of Meacham, fastened his right on the proceeds of the sale, abandonment and removal from the State were of no significance. The moment the understanding accepts the idea that the real transaction between Meacham and his creditors was that if he had a right, when the sale was made, to an exemption at all, he should be paid for it out of the sale-money, it is perceived that the result of the transaction was a disposal by Meacham of the homestead. If the proceedings in the suit, coupled with an actual receipt of the $1,500, would have concluded Meacham from the assertion of a homestead on the premises, then his rights and those of the family attach to the money, in lieu of it. But Meacham died in the summer of 1874, and his interests descended to his children. Although the exempt homestead had been converted into money, the right to that passed to those appointed to take it *directly*, and not through an administrator. It constituted no part of the decedent's estate for administration. An administrator, if there had been one, could not have collected it, and could rightfully have had no concern with it. Though not, perhaps, precisely within the letter of § 2143 Code 1871, it is within its equity and policy. That policy was to free the exempt property from forfeiture to creditors who had judgments, if the debtor sold it. The words used in the statute are very broad; technical terms seem to have been discarded. The expression is " *be disposed of*," which includes any of the modes by which the title may be transmitted from one person to another. If the effect of what occurred was to devolve the title, which was in the exemptionist, on the purchaser, there has been accomplished a disposition by the debtor, not by a direct conveyance, but by an indirect mode. No principle of law demands, six years after the Chancellor decreed the money to Meacham, which decree was approved by this court, except as to amount, that the creditors shall be permitted to withhold the value of the homestead from the heirs, because Meacham and wife removed to another State.

*Decree reversed and cause remanded.*

CHALMERS, J., having been of counsel, took no part in this decision.