DOGAN, SHERIFF, *et al. v.* COOLEY.

(In Banc.   Jan. 23, 1939.)

[185 So. 783.   No. 33465.]

W. M. Mitchell, of Grenada, for appellants.

S. C. Mims, Jr., and W. B. Nicols, both of Grenada, for appellee.

**Ethridge, J.,** delivered the opinion of the court.

The appellee, Mrs. Mary L. Cooley, filed a bill in the Chancery Court of Grenada County against D. W. Dogan, Sheriff, and R. F. Carpenter, who was plaintiff in an

execution, alleging that on or about January, 1936, the complainant, appellee here, purchased from the Grenada Bank, through one of its trustees, the south half of northeast quarter of section 15 in township 21 of range 2, east, in Grenada county; and that at the time of the purchase she had the title thereto made in the name of her husband, J. Matt Cooley, for the reason that she was not able to pay in cash the entire purchase price; and the bank required notes and a mortgage on the land for the balance due thereon. At the time of this transaction the appellee was in the mercantile business, being associated with her sister. She was advised that having a debt of record would impair her credit. She made the cash payment of $500 on the purchase price of the land, and all the subsequent payments; and financed all farming operations on the place for the year 1936. The appellee avers that her husband did not invest a dollar in the farm, that his connection therewith was as her husband; and that it was the intention of her husband and herself to have the title placed in appellee as soon as this could be done without injury to the business of appellee; and that in compliance with such agreement her husband, J. Matt Cooley, executed a deed to her to the said lands, which was made an exhibit to the bill.

It was then averred that at the July, 1936, term of the Circuit Court of Grenada County R. F. Carpenter secured a judgment against J. Matt Cooley, and caused an execution to be issued thereon, and placed in the hands of the sheriff, D. W. Dogan; and the complainant charged that pursuant thereto, and by virtue thereof, he has levied upon, and is threatening to sell the lands in question thereunder, and will do so unless restrained by the court.

The complainant further alleged that her husband, J. Matt Cooley, has never had an interest or equity in the lands, that he acted as the complainant's trustee; and that the vesting of the title in the said J. Matt Cooley did not mislead the said Carpenter, for the reason that the li-

ability upon which the judgment was predicated had been incurred by the said J. Matt Cooley many years prior to the purchase of the land; and, further, that not only would the sale of the land under execution cause substantial and irreparable injury to her credit, but that a deed under the sale would be a cloud on her title, and that she would have no adequate remedy at law to protect her rights, etc.

One of the exhibits to the declaration was a deed from J. Matt Cooley to the complainant, dated October 27th, 1937, and acknowledged on the same day, to the lands described in the bill, in consideration of one dollar. The judgment under which the land was about to be sold was obtained in July, 1936, and enrolled in August, 1936, and was a lien of record on the date on which J. Matt Cooley conveyed the lands in question to the complainant, his wife.

On January 22, 1937, after filing the original bill as above stated, an amendment to the bill of complaint was filed, in which it was alleged that the complainant and J. Matt Cooley are husband and wife, living together as such, are householders, have a family, and are resident citizens of Mississippi; and that this status has existed for the past ten years or more; that the land described in the original bill constitutes their homestead, and is occupied as such, comprising an acreage of less than 160 acres, the value of which, after deducting the indebtedness thereon secured by a mortgage, does not exceed $3,000; and, further, that the lands constituted such homestead on November 1, 1936, which status has continued to the present date. Complainant avers that the above facts, in addition to other grounds alleged in her bill of complaint as reason for restraining the sale of such lands by the sheriff, entitle her to the relief prayed for in her original bill.

The answer to the bill denied that the lands constitute a homestead, but admitted the relationship of marriage

between Mary L. Cooley and J. Matt Cooley; denied that the complainant owned the lands here involved, alleging that the property was then, and remains, the property of J. Matt Cooley, subject to the sale for his debts; and denied that complainant ever obtained title to the property by reason of having advanced the purchase money therefor, if she did in fact do so; denied that his connection with said property has been that of complainant's manager or agent, but averred that he managed and operated the farm as owner thereof; and denied that it was the purpose and intention of the complainant and her husband that the title to the land should be conveyed to the latter as trustee for complainant. They allege that if such were the intention of the parties, it would be an illegal act, a fraud upon the rights of creditors of J. Matt Cooley, a violation of the statutes against conveyances between husband and wife, and those prohibiting secret trusts between them; and that the effect was to convey the title therein, legal and equitable, to the husband, J. Matt Cooley, rendering the lands subject to his debts.

On the hearing the complainant, Mary L. Cooley, testified in support of the allegations of the bill, over objection, that the reason the title was in her husband's name was that she and her sister were in business, and she did not wish to embarrass her credit with the indebtedness, and so informed Mr. Adams, the officer of the bank, that she preferred not to sign the papers, but to let her husband sign them, and she would take care of the payments—that she had paid all the money for the purchase of the lands. The court admitted the evidence, subject to reserve ruling. And she testified that she did this for the reason that her sister was a partner in her business, and she did not think it would be right to have this debt outstanding against her, with which the officers of the bank agreed. She testified that at the time the execution was levied she and her husband, Mr. Cooley, were living out on the place, that Mr. Cooley was out

there at the time of the trial, and was still farming it; and that it constituted their homestead.

It further appeared from the testimony that J. Matt Cooley, husband of complainant, lived on the place and managed it; that through tenants a large crop of cotton was grown on the land in the year 1936, the bulk of the proceeds being applied to the making of permanent improvements on the place; that some sixty bales of cotton were produced, of which half went to the owners and half to the tenants; that J. Matt Cooley, in selling the cotton, placed the money in the Bank of Grenada to the credit of Mary L. Cooley, but that he and a brother of his signed a note and deed of trust to the bank in which certain livestock on the place and the crops to be grown in 1936 were to be conveyed to the bank by J. Matt Cooley and his brother, and not by the complainant, Mary L. Cooley.

It appears from the evidence that after the purchase of the lands the house and barn were erected thereon, increasing the value of the property; and that Mrs. Mary L. Cooley, when the bank received payment for the notes given for the balance of the purchase money, had the bank assign the note to her; that the balance of the purchase money, as shown by the record, was $671.25, and the check in evidence shows that this amount was paid by Mrs. J. Matt Cooley, the check being marked "Paid 10-31-36," but does not show the transfer endorsement to her; and the notes claimed to have been transferred to the complainant by the bank do not appear to have been introduced in evidence.

It is shown by the testimony that the land was worth more in January, 1937, than when the execution was levied on it, as a house and barn had been erected since that time. Counsel representing Mrs. Cooley made the following statements in the record: "I just want to make this statement to save time. I am going to concede that this home is worth more than the homestead exemption.

I raised that point before, but at that time our Supreme Court had not passed on it as it has recently, that it doesn't make any difference how much you owe on your homestead, if it is worth over . . . more than three thousand dollars it is liable for all the debt over that.''

Counsel for the defendant: "You admit how much more? As much more as this judgment calls for?''

Counsel for the complainant: "Yes, sir. I admit that. We amended our bill on that proposition. We are standing on the proposition that it is Mrs. Cooley's property.''

''The Court: In other words you are withdrawing your amendments?

''Counsel for the complainant: Yes, sir, as to it being a homestead, because it is worth more than the homestead exemption.

''The Court: You are withdrawing your amendment to the bill? "Yes, sir.

''The Court: All right, let the record so show.

''Counsel for the complainant: Then it is now just on the question of the trust.

''The Court: Yes, sir.

''Q. Now, Mrs. Cooley, you say that you took your money and paid for it, but—

''The Court (interrupting) Now, Mr. Mims, the Court wants you to understand that you are withdrawing your amendment.

''Mr. Mims: Judge, I say I am withdrawing the amendment as far—I don't recall just exactly what the amendment sets up.

''Counsel for defendant: It sets up that you are entitled to three thousand dollars exemption and that the place is not worth more than that and the indebtedness.

''Counsel for complainant: Here is what we admit. We admit the place is worth over three thousand dollars.

''The Court: In spite of the fact of the recent statute on amendments?

''Counsel for complainant: If there is any recent statute I haven't seen I want to take advantage of it.

"The Court: I haven't seen it either, but I understand it admits that the debts and taxes on the land may be added to the three thousand dollars.

"Counsel for defendant: That is not applicable in this case.

"Counsel for complainant: "Well, I am going to withdraw it if there is any question about it, Judge; I withdraw then. Let's go on. We will just still stand on every issue. Let me read my amendment and see what else I set up in there (reads amendment) Yes, sir, we withdraw the amendment.

"The Court: Let it be shown definitely now that solicitor for the complainant withdraws the amendment and stands on the original bill. All right, let's proceed."

In the course of the evidence the following questions and answers appear:

"Q. Mrs. Cooley, as a matter of fact Mr. Cooley was down there running that place was he not—operating it? "Yes, sir, he was looking after it for me."

"Yes, ma'am, but he managed it and did all the business in his own name, didn't he?" "Yes, sir, he looked after the place."

"And sold the cotton, didn't he?" "Yes, sir, he sold the cotton."

J. Matt Cooley, in the course of his testimony stated that he was Mrs. Cooley's husband, and in answer to the question, "Now, Mr. Cooley, state to the court this transaction in the purchase of this particular land from the bank. Who bought the land?" replied, "Well, Mrs. Cooley bought it. Of course I bought it for her." Objected to by counsel for the defense.

"The Court: I will make the same ruling. I am permitting the testimony to be given, but I am not ruling on the effect on the issues in this case at this time. In other words, I am not going to try the lawsuit on the objections to the testimony.

"Q. Now when the land was put in your name, the

title—what was the understanding that you had with Mrs. Cooley? Objected to by counsel for the defense.

"The Court: I am going to reserve the ruling on that specifically.

"Q. What was the understanding between you and Mrs. Cooley? The understanding was that she would go ahead and put it in my name for the time being, you see, on account of her being in business with her sister, and later on why we could change it up.

"Q. And you did later make her a deed to it— Yes, sir.

"Q. —in compliance with that understanding? Yes, sir, about the time she paid the second note on it, I think. She made the cash payment of five hundred dollars, and about the time the other note came due, or anyway about the time she paid it, we changed the deed. I changed the deed to it.

"The Court: In order that both solicitors may understand the ruling of the court as to the objection of defendant as to this agreement between husband and wife, I say I permitted it to be entered as part of the record without deciding its effect on the issues in the case, meaning thereby that the court would determine the case at the end of the evidence and the argument—

"Counsel for complainant, Yes, sir.

"The Court: —in view of the fact that the defendant has raised the point that there is no compliance with the statute as to trusts or contracts between husband and wife.

"Counsel for complainant: Yes, sir. Of course, I understand the Court is going to reserve that for presentation in the argument.

"The Court: Yes, sir."

The Chancellor decided in favor of the complainant, on the theory that J. Matt Cooley was merely the trustee for his wife, and that she, having paid money for the place, became entitled to the equity in the property as owner as

against the husband and his creditors. It does not appear that the Chancellor decided to what extent, if any, the wife was subrogated to the note paid, which was secured by a deed of trust on the property, given to the bank.

We think that the decision was erroneous in holding that the wife was entitled to a trust, and that the husband held as a trustee for her benefit. Section 1944, Code of 1930, reads as follows: "A transfer or conveyance of goods and chattels, or lands, or any lease of lands, between husband and wife, shall not be valid as against any third person, unless the transfer or conveyance be in writing and acknowledged and filed for record as a mortgage or deed of trust is required to be; and possession of the property shall not be equivalent to filing the writing for record, but, to affect third persons, the writing must be filed for record."

It clearly appears from the facts above stated that there was no trust in writing, signed, acknowledged and filed for record, nor was there any agreement signed by the husband and wife, acknowledged and filed for record, in conformity to the above statute.

In the case of Snider v. Udell Woodenware Co., 74 Miss. 353, 20 So. 836, it appears from the statement of facts that the appellant and her two younger sisters owned the lands in controversy, as tenants in common, as the heirs of their father, who died in possession; that she married the defendant, L. Snider, the same year of her father's death, and her sisters fell to her care; that shortly after her father's death, because of some complications concerning the title, she was advised by the attorney then employed by her to let the land be sold for taxes, buy it in her own name, and hold it for her own benefit. The lands were sold for taxes in 1877, and her husband bought it in for her with her money; but through some inadvertence the conveyance was made to the husband. She received the rents and profits, and did not know until a few months prior to the filing of the bill that the tax deed was made

to her husband. To remedy this error he executed to her a deed to the land, the consideration therefor being $780. It appears that her husband had become insolvent, and it was agreed between them that she would take this in payment of a debt he owed her, and for which she had no security. This deed was not acknowledged, but was recorded without her husband's acknowledgment; and afterwards, on July 2nd, 1876, it was acknowledged by her husband and again recorded. In the interval between, the Udell Woodenware Co. sued out a writ of attachment in the Circuit Court of Madison county against L. Snider, the husband of appellant, on the ground of her husband's non-residence, and indebtedness due the company. The bill charged that the Udell Woodenware Company had notice of her title because of its being on record, and through the investigation of its attorney. The Court held that the demurrer to this bill was properly sustained; that the conveyance from Snider to his wife was not acknowledged, and was therefore not entitled to registration; that if the defendant or its attorney saw the copy of the conveyance spread upon the record, and read it, or if actual knowledge could be proved of the fact that the conveyance had been made, no force could be given to the deed. Said the Court: ''It is not a question of notice, but of the validity of the transfer of the estate from the husband to the wife. The statute governing conveyances from husband to wife declares that they shall not be valid as against third persons unless in writing, acknowledged and recorded; and emphasis is given to this requirement by the declaration that change of possession shall not avail, but 'to affect third persons, the writing must be filed for record.' '' Citing section 2294, Code of 1892, and Montgomery v. Scott, 61 Miss. 409. The Court then continued: ''The effort of complainant to disregard the conveyance, and fix upon the land a resulting trust, because her money was paid for the same at the tax sale under which her husband bought, must fail, for the reason

that she shows by her own statement that the land, when sold for taxes, belonged to her, and to her two younger brothers or sisters, who were under her care, and that the sale for taxes was permitted by her to be made in order that she might 'buy the same in her own name, and for her own benefit.' '' The Court held that she could not invoke the aid of a court of equity.

In Carberry v. Lann-Carter Hdw. Co., 126 Miss. 293, 88 So. 769, it is said: ''Under the provisions of section 2522, Code of 1906 (section 2056, Hemingway's Code), which among other things provides that a conveyance of land between husband and wife 'shall not be valid as against any third person, unless the transfer or conveyance be in writing and acknowledged and filed for record,' a conveyance of any interest whatever in land by the husband to the wife is void as to the creditors of the husband whose debts were contracted prior to the filing of such conveyance for record.''

In McCrory v. Donald, 119 Miss. 256, 80 So. 643, it was held that where a husband conveyed his land to his wife at the same time in this state and in the state of Alabama, the fact that the Alabama court refused to set aside the conveyance as to the lands in that state, as a fraud upon the creditors, was not binding on the courts of this state in a similar suit as to lands in this state, the subject matter and the law being different. That in a suit to set aside a conveyance by a debtor to his wife, the fact that he remained in possession of the property, exercised ownership and made representations that he was the owner, and concealed such conveyance from his creditors by failing to record his deed, was sufficient to support a finding that he intended to defraud his creditors.

It was also held that section 2522, Code of 1906 (section 2056, Hemingway's Code) expressly required the conveyance between husband and wife to be recorded before it should take effect, so far as any third party is concerned. The setting aside of a conveyance from husband

to wife as fraudulent was not erroneously merely because, when the conveyance was made, the husband was not shown to have been indebted, where it is shown that he was indebted before such conveyance was recorded.

In the course of that opinion we said: "So far as the creditors of R. M. McCrory are concerned, this deed had no effect until it was filed for record. The statute has been construed in numerous decisions of this court, and all of them hold that such conveyances are not effectual to affect the interest of any third person until acknowledged and actually filed for record. Being then a conveyance, for the purposes of this suit, as of the date of its recordation, the creditors were not subsequent creditors, but were existing creditors, and the deed being a voluntary conveyance without consideration could be set aside by the creditors." See, also, Gregory, Stagg & Co. v. Dodds, 60 Miss. 549; Montgomery v. Scott, 61 Miss. 409; Black, Todd & Co. v. Robinson, 62 Miss. 68.

In Gregory, Stagg & Co. v. Dodds, supra, it was held that it makes no difference under the statute whether the creditor be an antecedent or subsequent one.

In McCabe v. Guido, 116 Miss. 858, 77 So. 801, it was held that both antecedent and subsequent creditors may "attack her verbal transfer of a store and stock of goods to her husband."

In Montgomery v. Scott, supra, it was held that neither the transfer nor the notice to third parties can be established by parol proof.

The statutes restricting contracts between husband and wife were enacted to meet a definite condition or situation; and they require publicity, or sources of publicity, in all such transactions. No one can compel the husband or wife to testify one against the other at the suit of an adversary, whether a creditor or otherwise. It may be that in cases they would testify truthfully and disclose all the facts, if permitted to do so; yet this cannot be permitted without the consent of the spouse; and the

spouse might therefore testify to transactions not susceptible of disproof, because the law refuses to compel such witness to testify without the consent of the spouse; consequently, it would leave third persons, in many cases, at the mercy of his adversary. For this reason a stringent rule was enacted, and must be enforced by the courts.

Furthermore, on the facts of this case, independent of the husband and wife statute, the transaction could not be held to be a trust, because under section 3348, Code of 1930, a trust could only be created where the purchase money either was all paid at the time of the transaction, or the party claiming the benefit of the trust had obligated himself legally to pay, which was not done here, any further than to the extent of the $500, paid at the time of the execution of the papers.

In Miazza v. Yerger, 53 Miss. 135, Judge Campbell, speaking for the court, laid down the test for determining a trust: "Again, it is announced, in an equally authoritative manner and with decided emphasis, that no trust in land can be set up by mere parol agreement, that no trust results from the breach of a mere parol contract, and that parol proof cannot be received to establish a resulting trust in lands purchased by an agent, and paid for by his own funds, no money of the principal being used for the payment; for the relation of principal and agent depends upon the agreement existing between them, and the trust in such a case must arise from the agreement and not from the transaction, and where a trust arises from an agreement, it is within the Statute of Frauds and must be in writing."

Of course, the trust results, in spite of the statute, if one person takes money belonging to another, and converts it to his own use, by investing in property in his own name. To create a resulting trust because of the payment of the purchase price by the beneficiary of the trust, the price must be paid, or the person claiming the benefit of the trust must have obligated himself to pay

it at the time the transaction took place. "A resulting trust in land will not be created in favor of one whose funds have been used in paying the purchase-money, where the land was purchased on a credit." Claiborne Bowman, Adm'r, etc. v. O'Reilly et al., 31 Miss. 261.

"After the legal title has been conveyed, the application of another's money to pay notes for purchase money creates no such trust in favor of the other. The trust must attach, if at all, at the time of the conveyance." Mc-Carroll v. Alexander, 48 Miss. 128; Gee v. Gee, 32 Miss. 190; Hitt v. Applewhite, Miss., 20 So. 161.

In Shrader v. Shrader, 119 Miss. 526, 81 So. 227, there was a bigamous marriage between R. M. Shrader and the woman known in the case as Emma Shrader; and R. M. Shrader used money belonging to Emma Shrader, his bigamous wife, in buying property which was paid for by them during the period when the two were living together in the relation of husband and wife—Emma Shrader believing the marriage to be valid. Although the trust was in force here, the legal wife, as sole heir of R. M. Shrader, was the adverse party, and she was not a third party within the meaning of the statute. In other words, the heir of R. M. Shrader stood precisely in his shoes, with no rights except such as he would have, were he living.

It was later expressly held, in the case of Self v. King, 124 Miss. 874, 87 So. 489, that a husband's heirs were not third persons, within the meaning of the statute requiring transfers between husband and wife to be in writing, and recorded. It is clear, therefore, from the authorities, that the decree of the Chancellor, holding there was a trust, and that the wife was the equitable owner, is wrong, and the judgment must be reversed.

It is also clear, from the record and the testimony, that the land involved in the suit was, in fact, a homestead; that both the complainant and her husband, J. Matt Cooley, were residing on it as a homestead when the execution was levied and the judgment obtained; and it is

also clear that counsel in the court below felt controlled and obligated by the decision in the case of Clark v. Edwards, 180 Miss. 97, 177 So. 361, and but for that decision would have pressed the point that it was a homestead, and that if the value of the homestead, exclusive of the deed of trust on it, did not exceed the $3,000, the execution creditors would be driven off. The question presented, therefore, is whether we should, in reversing the case, declare the law as we understand it to be, and give guidance to the court below in the further proceedings of the case, although the complainant withdrew, the amendment under the coercion of the holding in Clark v. Edwards, supra, in the court below.

As stated above, the court did not pass on whether the notes paid and claimed to be assigned to Mrs. Cooley by the bank entitled her to be subrogated to the extent of the money paid for her to the bank, and the notes transferred to her; and whether this would be superior to the rights of the judgment creditor. Rules of practice and procedure are designed to secure the justice of the law, not to defeat it. The rules are valuable guides, and will ordinarily be adhered to and followed. But where the rules would defeat the justice of the law, and bring about results not justified or intended by the substantive law, they may be subordinated to the primary purpose of the law, that is, the enforcement of rights or the redress of wrongs, in the interest of justice. Equity delights to do complete justice, and not by halves. Equity will not permit a wrong to go without a remedy. Equity does not worship at the shrine of technicalities. Equity regards substance rather than forms. Rights are to be secured in the courts, and rules of decision, or mere rules of procedure, are designed to secure justice.

It is clear to our minds—that is, to the minds of a majority of the Court—that the case of Clark v. Edwards, supra, is in conflict with cases decided theretofore by the Court. See the cases of Koen v. Brill, 75 Miss. 870, 23

So. 481, 65 Am. St. Rep. 633; Hays v. Barlow, 98 Miss. 487, 54 So. 2, Ann. Cas. 1913B, 394; and the case of Edmonson v. Meacham, 50 Miss. 34, wherein it was held that the judgment debtor was entitled to the homestead exemption to the value of $1,500; and where land was sold which brought the sum of $3,201 at an execution sale against the judgment debtor, the debtor had a right, as part of his homestead rights, to have set aside to him the sum of $1,500 out of the proceeds of the sale as against the judgment creditor levying an execution on a judgment for $4,066, and as against all other creditors. See the same case between the same parties in Meacham v. Edmonson, 54 Miss. 746.

In Hays v. Barlow, supra, it was held that where a creditor owns a judgment against his debtor, and also a trust deed covering exempt property, and none of the exempt property was his debtor's, a mandatory injunction would lie at the suit of the debtor to compel the creditor to exhaust, under his trust deed, the nonexempted property, before resorting to the exempted property. In other words, the creditor had both a mortgage and a judgment, and the mortgage covered both exempt and nonexempt property; and it was held that the policy of the law requires the creditor to satisfy his mortgage, if possible, out of the nonexempt property, leaving the exempt property free to the debtor. The opinion in this case is short, was written by the present Chief Justice, and reads as follows: "On this record appellee has the right to demand that appellant shall exhaust the nonexempt property before resorting to the exempt property. 12 A. & E. Encyc. Law, 212; 18 Cyc. 1461, note 11; Hodges v. Hickey, 67 Miss. 715, 7 So. 404; Koen v. Brill, 75 Miss. 870, 23 So. 481, 65 Am. St. Rep. 633; Miller v. McCarty, 47 Minn. 321, 50 N. W. 235, 28 Am. St. Rep. 375."

In Koen v. Brill, supra, the appellants obtained a judgment in the justice of the peace court against the

appellee for $196.95, and levied an execution issued thereon upon the homestead of the appellee, a residence he lost in the city of Vicksburg, of the value of $6,000. Appellee enjoined the sale of the premises under the execution on the alleged ground that the homestead was encumbered by debts and an equitable lien to the amount of $4,400; and that the sole effect of the sale of the premises under the judgment would be to "cast a cloud upon her title, and destroy all her rights of homestead, and do her irreparable injury." The appellant demurred to the bill, the Chancery Court overruled the demurrer, and appeal was taken here. The question then presented for decision was whether the homestead was subject to sale, under the circumstances stated. The Court said: "Our statutes forbid the sale under execution or attachment of the exempt homestead, unless, by its sale, something could be realized for the substantial benefit of the execution creditor. Under the admitted facts of this case, it would be impossible for a sale to be of any advantage to the appellants. On the contrary, they could only incur additional costs, while the attempted sale and conveyance would be a gross wrong upon the appellee, by clouding the title to her homstead. We cannot think that the rule marshaling securities applies to homestead exemptions."

The Court further said: "No burdens will be placed on the homestead, therefore, not created by the parties themselves, or by the law, as for taxes, nor will a mortgagee of real estate, a part of which constitutes the homestead, be permitted or required to resort to the homestead alone for the satisfaction of his lien, to the exclusion of the other real estate owned by the mortgagor; nor is the case one in which the securities can be marshaled."

The principles announced in these cases are directly in opposition to those announced in Clark v. Edwards, supra. The cases which we have commented on as being

opposed to the last named case do not seem to have been before the Court, or to have been presented by counsel.

The statutes of the different states vary greatly on homestead exemptions, but see the following cases from other states having statutes similar to our own: Hoy v. Anderson, 39 Neb. 386, 58 N. W. 125, 42 Am. St. Rep. 591; Franklin v. Comer, 170 Ala. 229, 54 So. 430; White v. Fulghum, 87 Tenn. 281, 10 S. W. 501. See, also, 29 C. J. 828, sec. 102; 29 C. J. 838, sec. 132.

We are further persuaded that Clark v. Edwards, supra, ignored the provisions of section 1772, Code of 1930. That section deals with the sale of premises not capable of division, but valued in excess of the statutory amount of the exemption, and is as follows: "If the premises be not capable of being so divided as to set off the debtor a part, including the dwelling house and not exceeding three thousand dollars in value, inclusive of improvements, or if the debtor have made a valid homestead declaration, and the homestead exceed three thousand dollars in value, the householders or freeholders shall value the land, inclusive of the dwelling house and buildings; and if the surplus of the valuation, over and above the exempt value, shall, within sixty days, be paid by the execution-debtor, the premises shall not be sold; but if the surplus be not paid within sixty days after the valuation, the officer may advertise and sell the premises, *if the same shall bring a greater sum than the exempt value* [emphasis supplied]; and out of the proceeds of the sale he shall pay to the execution-debtor the sum of three thousand dollars."

It will be noted from a reading of this decision that if the execution-debtor did not pay off the amount of the value of his exemption within sixty days, that the premises may be advertised and sold, "if the same shall bring a greater sum than the exempt value; and out of the proceeds of the sale he shall pay to the execution-debtor the sum of three thousand dollars." It is manifest from

the quoted part, the latter part of the statute, that if the sale does not bring in excess of $3,000 it shall be abandoned, and no further proceedings taken. If it does bring more than $3,000 the officer conducting the sale must, out of the proceeds of the sale, pay to the execution-debtor the sum of $3,000. It is clearly within the contemplation of the law, and in furtherance of the law, to give the citizen who is a homesteader the value of $3,000 if his homestead is sold under the statutory proceedings.

The exemption laws of the state have been liberally construed, and the rule of liberal construction prevails, doubtful questions being construed favorably to the homesteader. Under the law a judgment debtor may sell his exempt property and move it out of the state; or he may move the exempt personal property out of the state, no lien attaching thereto; and he may sell his exempt homestead, and the proceeds are expressly exempted under section 1777, Code of 1930.

This liberal policy of the law is designed to guard the family from the pitiless consequences of imprudence and the harsh lashing of adversity. The home is designed to afford a shelter and habitation, and especially to protect the wife and children from the mistakes and misfortunes of the head of the family. We think, therefore, that the case of Clark v. Edwards, supra, is not only in conflict with the cases decided prior thereto, but that it is contrary to the main purposes of the statute, and that it is mischievous in its operation, and should be, and is hereby, overruled. The case will be reversed and remanded for a new trial, in conformity with the views expressed.

Reversed and remanded.

**Griffith, J.,** delivered a concurring opinion.

In concurring in the decree of reversal, and in agreeing that the chancellor was in error in sustaining appellee's bill upon the theory of a resulting trust, I prefer

to go no further than to stand upon what is the equity, or rather the want of equity, in the particular case under its specific facts. Here the complainant, the wife, frankly admits that she had the title and the record debt for the balance of the purchase money placed in the name of her husband, so that none of this should show up against her in the mercantile business which she was conducting. To be plain with the matter, therefore, this, to my mind, was no honest scheme, and because thereof ought to bar, and does bar, her from invoking the aid of equity in respect to it—as was ruled in principle in Snider v. Udell Woodenware Co., 74 Miss. 353, 20 So. 836.

In regard to overruling Clark v. Edwards, 180 Miss. 97, 177 So. 361, I fully concur in everything that the other opinions in the present case have had to say on that subject.

**McGehee, J.,** delivered a concurring opinion.

Although I entertain some doubt as to whether the chancellor was in error in holding that the land in controversy was, in reality, the property of the appellee, and therefore not subject to the lien of the judgment against her husband at the time the execution was levied; and while I am also inclined to agree with the view expressed by the Chief Justice in the dissenting opinion on that feature of the case I express no definite opinion or conclusion in regard thereto, for the reason that I think the more certainly correct solution of the question as to whether this homestead is subject to sale under the execution is that the cause be reversed and remanded for a full development of the facts, in order that it may be ascertained whether the property exceeds in value the sum of $3,000, after deducting the amount of the indebtedness secured by a lien thereon. Under such procedure the same result may be substantially accomplished as was reached in the decree

appealed from; and, at any rate, the soundness of the decree then rendered may be made more clearly to appear. However, in adopting this view of the matter, and in concurring in the ultimate conclusion reached in the controlling opinion, perfect candor compels me to acknowledge that I may be influenced, to some extent, by a desire to see the Court thus take advantage of the opportunity here afforded to return to that more liberal construction which was given section 1765, Code of 1930, in favor of the homestead exemptionist, prior to the decision of the case of Clark v. Edwards, 180 Miss. 97, 177 So. 361.

**Smith, C. J.**, delivered a dissenting opinion.

We are to decide whether this land can be sold under an execution on a judgment against the appellee's husband. The legal title to the land is vested in the appellee by a deed to her from her husband, but, as that deed was made after the rendition of the judgment on which this execution was issued, it cannot be invoked by the appellee against the lien of that judgment.

The appellee purchased the land in controversy from the Grenada Bank, agreeing to pay therefor $500 on the execution of a deed thereto and an additional sum in deferred payments to be evidenced by promissory notes. She paid the $500, but requested Adams, the bank cashier, to have the deed made to her husband and let the notes be signed by him instead of by her. Adams hesitated to accept the husband's notes, but, on the appellee's assuring him that she herself would pay the notes, he agreed thereto and the deed and notes were executed accordingly. The notes were paid when due by the appellee with her own money.

The appellee's claim is that when this deed to her husband was executed, he received the land thereby conveyed impressed with a resulting trust for her

benefit. If this is true, the court below committed no error in enjoining the sale of the land under the execution.

My reversing associates say that no trust here appears, but differ among themselves as to the reason therefor. Judge McGehee is in doubt on this question but thinks the decree of the court below should be reversed and the case remanded for trial on the appellee's claim (see Judge Ethridge's opinion) that the land is the homestead of herself and her husband. Judge Griffith is of the opinion that no trust here appears for the reason that the appellee had the title to the land placed in her husband's name for the accomplishment of a fraudulent purpose. Judge Ethridge, with whom I presume Judge Anderson concurs, says that the court below erred ''in holding that the wife was entitled to a trust, and that the husband held as a trustee for her benefit.''

I will have no occasion to hereinafter specifically refer to the opinions of Judges McGehee and Griffith, and what I have to say with reference to the opinion of the latter will appear in my discussion of Judge Ethridge's opinion, to which I now come.

I presume that the broad language of this opinion hereinbefore set forth should be limited to the facts of this case; and what is intended thereby is that no trust here results to the appellee which she could invoke against a party other than her husband, for the reason given therefor is, that as the claimed resulting trustee and the cestui que trust are husband and wife, the trust must have been evidenced under Section 1944, Code of 1930, by a writing signed and acknowledged by the husband and recorded, as a mortgage or deed of trust is required to be. That section is as follows: ''A transfer or conveyance of goods and chattels, or lands, or any lease of lands, between husband and wife, shall not be valid as against any third person, unless the transfer or conveyance be in writing

and acknowledged and filed for record as a mortgage or deed of trust is required to be; and possession of the property shall not be equivalent to filing the writing for record, but, to affect third persons, the writing must be filed for record.''

This holding is based on a fundamental misconception of the nature of a resulting trust, of when, and from what sources, it arises, and is applicable only to an express trust.

''A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of.'' 2 Rest. Trusts, Sec. 404. It is a creation of equity to carry out the presumed intention of the parties to a transfer of property. Robinson v. Strauther, 106 Miss. 754, 64 So. 724; Maas v. Sisters of Mercy, 135 Miss. 505, 99 So. 468.

''Where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid,'' 2 Rest. Trusts, Sec. 440, unless the person ''by whom the purchase price is paid manifests an intention that no resulting trust should arise,'' op. cit., Sec. 441; or the placing of the legal title to the property in one other than the one who pays therefor is for the accomplishment of an illegal or fraudulent purpose, op. cit., Sec. 444. So say all of the authorities, including numerous decisions by this Court, many of which are collated in Cannon v. Holberg Mercantile Company, 108 Miss. 102, 66 So. 400; Moore v. Moore, 74 Miss. 59, 19 So. 953; and all of them in the Mississippi annotations to 2 Rest. Trust, Sec. 440. See also 65 C. J. 382 and 26 R. C. L. 1216. All that is necessary to create such a trust is that the purchase money for the property, the title to which is

placed in another, shall be paid or agreed to be paid at or before the deed to the property is executed.

A resulting trust does not depend on a promise therefor, and may arise though no such promise was made. Maas v. Sisters of Mercy, supra, and the transferee did not know of the transfer of the property to him. A trust always arises, it matters not what the relationship of the parties may be (including husband and wife, Greaves v. Atkinson, 68 Miss. 598, 600, 10 So. 73; Shrader v. Shrader, 119 Miss. 526, 81 So. 227), ''where a transfer of property is made to one person and the purchase price paid by another,'' under the facts and circumstances that here appear. Authorities, supra.

The appellee not only did not manifest an intention that no resulting trust should arise, but, on the contrary, clearly indicated that the title to the property was intended only to be temporarily in her husband, the beneficial interest to remain in her. If she had the legal title to this land placed in her husband for the purpose of defrauding her creditors, no resulting trust in her favor would arise. Snider v. Udell Woodenware Co., 74 Miss. 353, 20 So. 836. The evidence bearing on her purpose in so doing discloses without conflict therein that she was engaged in the mercantile business; and if she signed the notes for the deferred payments on the property, and became thereby liable for the payment thereof, she would have to disclose this liability in making her financial statements when requested or required so to do for the benefit of persons from whom she purchased her stock in trade, and to that extent her credit would be impaired. No claim is here made that she intended thereby to defraud her creditors or any other persons, or that any harm resulted to anyone therefrom. Because of the fact that the grantee in the deed to this property was the appellee's husband, no resulting trust arises unless she indicated when or before the deed was made that the payment by her of the money therefor was not

intended as a gift or advancement to him. That she so indicated clearly appears from the evidence.

As the appellee paid $500 of the purchase money for this land at the time the deed to her husband was executed, under Shrader v. Shrader, 119 Miss. 526, 81 So. 227, and all of the authorities, a resulting trust for her benefit arises to that extent. In order for this resulting trust to be increased by the payment by her of the deferred payments for the property, she must have promised to make these payments when or before the deed was executed. Her promise so to do was made when the deed was executed.

In Judge Ethridge's opinion there appears an obiter dictum that were Sec. 1944, Code of 1930, left out of view, a trust would here result to the extent of $500 cash paid by appellee for the land, but not as to the deferred payments made by her thereon, for the reason that she had not obligated herself legally to make these payments. This is not given as another reason for reversing the decree of the court below. If Sec. 1944 of the Code should be held not to apply, the opinion admits that a trust would here result to the extent of $500; and if this be true, the decree of the court below would be affirmed. If the land is held in trust to any extent for the appellee by her husband, it cannot be sold under an execution on this judgment against him. The judgment creditor would have to resort to a suit in equity for that purpose, wherein her rights, as well as those of the judgment creditor, would be protected.

In what the illegality of the appellee's promise to make these deferred payments consists, is not stated in this opinion, but I presume it is supposed to rest on the fact that her promise was verbal, not written, and therefore unenforceable under some of the sections of the Statute of Frauds. Sec. 3344 et seq., Code of 1930. A promise in the form required by the Statute of Frauds is not illegal, but simply unenforceable over the objection of the

promissor. As this dictum is without effect here, I shall not pause to discuss it except to say that I do not agree thereto and am content to rest for the present on 2 Rest. Trusts, Sec. 456, and comments and illustrations thereunder; Crowley v. Crowley, 72 N. H. 241, 56 A. 190; and Gerace v. Gerace, Mass., 16 N. E. 2d 6, 117 A. L. R. 1459 (cf. Shrader v. Shrader, supra, and Bush v. Bush, 134 Miss. 523, 99 So. 151), and also to say that none of the cases cited by my reversing associates sustain this dictum. The form by which the facts and circumstances creating a resulting trust is evidenced, is of no consequence. This land was conveyed to the appellee's husband solely on her credit,—on her promise to pay therefor, which promise she kept. To hold that this promise to her grantor, in order to be effectual against the grantee, must have been in writing would be to furnish a like grantee in other cases with a shield to protect him in declining to recognize the trust and thereby commit a fraud—a moral wrong.

Sec. 1944, Code of 1930, can have no application here for this trust does not rest on any transfer or conveyance of the land to the appellee from her husband. It rests on the facts and circumstances under which the deed from the Grenada bank to him was made. That deed, in equity, conveyed no beneficial interest in the land to him, for, in equity, the entire beneficial interest therein vested in the appellee as a resulting trust *at the moment that deed was executed.* This being true, the appellee's husband has no interest in the land to be sold on an execution on this judgment. 2 Rest. Trusts, Sec. 308; Cannon v. Holberg Mercantile Company, supra, and authorities there cited. Sec. 3348, requiring declarations of trust to be in writing and recorded to be effective as such, expressly provides, "but where any trust shall arise or result, by implication of law, out of a conveyance of land, such trust or confidence shall be of the like force and effect

the same as it would have been if this statute had not been passed.''

The decree of the court below should be affirmed; but, if it is to be reversed, a final decree should be rendered here for the appellant unless some question remains to be tried and determined in the court below. Two such questions are said to appear: (1) Whether the appellee should be subrogated to the mortgage on the land paid off by her; and (2) whether the land is a homestead, and of not more than three thousand dollars in value after deducting the mortgage thereon from its actual value.

No claim to such subrogation appears in the appellee's bill of complaint and could not be made unless she had an interest in the land to protect when she paid off the mortgage.

The second question is brought into the case by the overruling of Clark v. Edwards, 180 Miss. 97, 177 So. 361. I concur in overruling that case, but have this to say thereon:

· 1. It does not appear from the amendment to the bill of complaint whether the mortgage on the land was executed before or after the appellant's judgment was rendered. If it was executed subsequent to the judgment, the lien of the judgment would not be affected thereby. When the judgment was rendered, it was a lien on the land to the extent of its value in excess of three thousand dollars, and this lien could not thereafter be voluntarily impaired, by the judgment debtor, by the execution of a mortgage on the land. This defect in the amended bill seems not to have been challenged in the court below, and, if challenged, can be cured by amendment. Cf. Le Blanc v. Illinois Central R. Co., 73 Miss. 463, at page 469, 19 So. 211.

2. The appellee by withdrawing her amendment to her original bill of complaint (see Judge Ethridge's opinion), removed the homestead question from the case, and, technically, is not now entitled to a remand of the

case in order that she may again present that question. This withdrawal, however, having been caused by an erroneous decision of this Court, may be said not to have been voluntary, and justice seems to require that she be not held to it.

3. Clark v. Edwards, supra, correctly interpreted Sec. 1765, Code of 1930, the homestead exemption statute, and what I shall now say is only supplementary to what was there said, and this opinion should be read in connection therewith.

Section 1765, Code 1930, is as follows: "Every citizen of this state, male or female, being a householder, and having a family, shall be entitled to hold exempt from seizure or sale, under execution or attachment, the land and buildings owned and occupied as a residence by him or her, but the quantity of land shall not exceed one hundred and sixty acres, nor the value thereof; inclusive of improvements, save as hereinafter provided, the sum of three thousand dollars." The question here is, and in Clark v. Edwards, supra, was, the meaning to be given the words "the value thereof" in this section. Do they mean the value of the land itself or the value of the owner's interest therein—here his equity of redemption. The statute provides that the "quantity of the land shall not exceed one hundred and sixty acres, nor the value thereof, . . . the sum of three thousand dollars." The word "thereof" manifestly refers to the preceding words "the land," so that the words "the value thereof" mean "the value of the land." The three-thousand-dollar value provision of the statute is not of itself alone a grant of an exempt value of that sum. The entire one hundred and sixty acres, regardless of value, would be exempt except for the three-thousand-dollar value provision; consequently, that provision is simply a limitation on the exemption granted of one hundred and sixty acres of land.

But it is now said in effect, that Section 1772, Code 1930, requires the words "the value thereof" to be in-

terpreted as meaning the value of the owner's interest therein in determining which debts due by the owner, secured by a lien on the land, should be deducted from the value of the land. The words of the statute said to necessitate this interpretation are, "if the same [referring to the land claimed as a homestead] shall bring [at an execution sale thereof] a greater sum than the exempt value." This excerpt from the statute does not define the words "exempt value," but manifestly refers to the exempt value provided in Section 1765 of the Code; and when we turn thereto, we find, as hereinbefore said, that the exempt value is of the land itself—not the owner's interest therein—not to exceed the sum of three thousand dollars. That Section 1772 does not change the clear meaning of Section 1765 is so obvious that I will not further discuss it.

Clark v. Edwards, supra, is in conflict with Koen v. Brill, 75 Miss. 870, 23 So. 481, 65 Am. St. Rep. 633, which case was not considered when the former was decided. Had it then been considered, the division of the Court which decided the case would have either followed it or remanded the case to the Court in banc for decision by it. It is manifest from the opinion in Koen v. Brill, supra, that the decision was there based on an assumption by the Court of the meaning of the statute without having given it mature consideration. None of the provisions of the statute were specifically referred to, and no attempt was made to justify the court's interpretation of it. The case, however, was decided forty years ago, and the statute there construed, Section 1970, Code of 1892, Section 1765, Code of 1930, had been twice re-enacted by the legislature, with its then interpretation, when Clark v. Edwards, supra, was decided. Consequently, I do not think it should have been there departed from, or that it should be now overruled.

In 1938, the legislature amended Section 1765, Code of 1930, so as to provide "that in determining this value,

existing encumbrances on such land and buildings, including taxes and all other liens, shall first be deducted from the actual value of such land and buildings." Chapter 125, Laws of 1938. This amendment to the statute, however, can have no retroactive effect and could not be invoked by the appellant here.

McGowen, J., concurs in this opinion.