### JACKSON v. COLEMAN et al.

[76 South. 545, Division B.]

1. HOMESTEAD. *Abandonment. Liberal construction of laws.*
   Homestead laws should be liberally construed for the exemptionist and an abandonment will not exist unless it is clear from the proof that the exemptionist has removed from the homestead' with the intention of not returning.

2. HOMESTEAD. *Abandonment. Statutes.*
   A widower, who, being unable to work on account of rheumatism,. left his farm and leased it for five years in order to support his children from the rent and who tried to regain possession of the farm after he was better, did not abandon his homestead within the meaning of the Code 1906, section 2157, in relation to exemptions.

3. HOMESTEAD. *Divorce, Alimony. Execution.*

    A homestead where there are dependent children is not ordinarily subject to an execution for alimony, such a case not being among those named in Code 1906, section 2156, wherein the homestead is not exempt, and the court will not add to such exceptions.

4. HOMESTEAD. *Divorce. Alimony. Execution.*

    Where there are dependent children, the homstead is not subject to a demand for alimony unless the pleadings and decree in the divorce proceedings describe and show the necessity for a lien on the homestead.

APPEAL from the chancery court of Coahoma county. HON. IVE MAY, Chancellor.

Suit by Lindsey Jackson against Emmett Coleman and others. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*D. A. Scott* and *E. M. Yerger,* for appellant.

The appellees base their case on the following propositions: 1. That the trial court has rendered a decision on a question of fact, and that such a decision will not be reversed; 2. That upon the divorce of Lindsey Jackson and Alice Jackson, Lindsey had no further rights of a homestead exemption; 3. That the amount paid for the land was entirely sufficient in law; 4. That the decree of the chancellor in the case of *Alice Jackson* v. *Lindsey Jackson,* in which a divorce was granted to the former, and alimony allowed her, was, in effect, a lien upon the land, sold under execution, belonging to Lindsey Jackson, even though said land may have been, at the time of said sale, the homestead of the appellant.

Taking up the first proposition, we find that the rule of law, in this state as found in section 172, R. C. L. Vol. 2, under the head "appeal and error" is as follows:

"Under the present practice in equity, while the evidence is heard by the court *viva voce,* still the findings of the trial court are open for review, and while it is the

general practice to defer in large measure to its decision on a question of fact, on account of its superior advantage in weighing the evidence, the reviewing court retains the right, unless otherwise provided by statute to weigh the evidence and draw its own conclusion.'' 2 R. C. L., page 204, section 172, and numerous authorities cited in footnote 17; *Baker* v. *Cochran,* 2 Miss. 26.

We insist, that in the instant case, the decree is manifestly wrong, that the decision is so clearly against the great weight and preponderance of the evidence that this court in its great wisdom, and love of justice cannot and will not permit the decision, handed down by the lower court to stand. *Maxwell* v. *Harkleroad et al.,* 77 Miss. 456; *Garland, Executor,* v. *Rowan.,* Q. S. & M. 630; 2 R. C. L., section 187, and 188, pp. 225-226; *Ellison* v. *Ga. R. B. Co.,* 87 Ga. 691; 4 C. J., pp. 1099, 3078.

As to the proposition that Jackson did not intend to speedily re-occupy it, the only evidence in the record, which bears out appellee's theory, is a statement which counsel for appellees, elicited for Jackson, after a very long, tedious and arduous examination, after the old man had been worried to such an extent that he hardly knew what he was doing or saying. He testified time and time again as to the efforts which he had made to lease the land for one, two, or three years, and as to the fact that finally he did lease the land for five years, when he found that he could not rent it for one, two, or three years.

As a matter of the second proposition, we submit that counsel does not cite one single authority, which would substantiate his idea. The law is settled, and we find it stated, in 13 R. C. L., page 557, coming under the head of Homestead, as follows: ''Primarily, the husband, and not the wife, is the head of the family, and any man who has a wife is considered the head of a family within the meaning of homestead or exemption statutes, although he has no children. And it makes no difference that his wife may have deserted him and may be residing in an-

other state, and that he may be living in improper relations with another woman.''

As to the proposition, that the decree for alimony, in the divorce proceeding, after being enrolled, became a lien on the homestead of old man Lindsey Jackson, we find that the law is otherwise. 1 R. C. L. section 91, page 945, 21 Cyc. 521.

We will take up briefly one or two of the cases cited by counsel for appellees, on this proposition. The first is that of *Mosley* v. *Larson,* 86 Miss. 288, which explains the law in Mississippi. Adverse counsel has favored us with a long quotation from Justice Cox's opinion. We will quote from his brief only a part of this quotation, and give you our idea as to what is meant by it.

''We further hold that upon the facts averred, appellee is entitled to suit money and to alimony *pendente lite* and permanent and that the sums allowed for these purposes may be made a lien upon the homestead superior to any claim of appellants for reimbursement, etc.''

We know that this is the law; that the court, having jurisdiction of the parties may decree the alimony to be a specific lien upon the land superior to the right of the homestead exemption. Counsel cites also the case of *Barber* v. *Barber,* 21 How. (U. S.) 582.

We realize that this is the law and have no fault to find with this statement of it. At least two-thirds of the cases cited by counsel for appellees, on this proposition, are directly and unequivocally in favor of the appellant, and we could find no stronger authorities no matter where we might look in our favor.

In conclusion we wish to call the court's attention to the fact that in reality there is practically no question of fact decided by the lower court. The sole real question which counsel for appellees claim to be a question of fact is that of the abandonment or non-abandonment of the homestead by Jackson which is a question of law to be now decided by this court in view of the facts as shown by this evidence.

We submit that adverse counsel have failed utterly to sustain the several propositions advanced by them in their brief, and that under the facts as shown by the evidence and the law applicable thereto the decision of the chancellor should be reversed.

*Brewer, Brewer & Brewer,* for appellee.

Many of the cases cited by counsel on the question turned not only on the question of abandonment, but also upon various statutes in effect in the states where rendered. Alabama, since 1877, has an act which permits the leasing of a homestead without destroying the homestead right in the land, but prior to the passage of this act the supreme court of Alabama was called to pass on the question of whether or not the leasing of a homestead amounted as matter of law to an abandonment of it.

And until the passage of the act mentioned, it was well settled in that state that the leasing for a term of years was considered as a matter of law and abandonment of the homestead. 59 Alabama 566; 41 Alabama 302; 63 Alabama 257. When one has a homestead, and leaves it for the purpose of regaining his health, the law requires him to return to it as soon as his health is regained.

The expression of a wish to return to the homestead is not enough to entitle one to retain a homestead when absent from it.

The record here doesn't disclose that Lindsay Jackson was absent from the land by reason of some casualty or necessity, not for a period of five years, and whatever his intentions were as to returning, are quite immaterial. As the court in *Moore* v. *Bradford,* 70 Miss. 70, said: "Ceasing to reside on a homestead is rather matter of fact than an intent."

Upon the facts and the law, we respectfully submit the bill must fail. The lien of the judgment of Alice Jackson was effectual against the real property of the complainant

here. Lindsey Jackson had been possessed of real-estate other than that claimed as a homestead, and if there had been no statute creating a lien by the enrollment of the judgment, there is a possibility that the decree would have created only a personal liability, and might not have operated as a lien, although the weight of authority is to the contrary. *Conrad* v. *Everich,* 50 Ohio, State 476.

Nor, can it make any difference that the judgment was for the payment of alimony in installment in the future. In *Story* v. *Story,* 41 N. J. Eq. 370, the court held that a decree for alimony payable in installments creates a lien upon the lands of the husband as the alimony falls due. This case is reported also in 2 Atl. Rep., 7 Atl. 525.

And it has been held that although an application for alimony does not specifically describe any property of the husband, the judgment of decree granting the application is the lien of an ordinary general judgment for the alimony so awarded. *Coulter* v. *Lumpkin,* 94 Ga. 225, S. E. Rep. 461.

We respectfully submit that the land was subject to the execution by the wife for alimony, and this view is supported by several well reasoned opinions, quoted hereinafter. *Boyle* v. *Shuman,* 59 Ala. 566; *Stown* v. *Lillie,* 63 Ala. 257; *T.* v. *T.,* 56 Miss. 36; *Bennett* v. *Dempsey,* 94 Miss. 406; *Majors* v. *Majors,* 58 Miss. 806; *Land* v. *Boykin,* 25 So. 172; *Porter* v. *Harrison,* 27 So. 302; *Hollins* v. *Crooper,* 40 So. 378; *Conrad* v. *Everich,* 40 Am. St. Rep. 584; *Mosley* v. *Larson,* 86 Miss. 288; *Thompson* v. *Tillotson,* 56 Miss. 36; *Best* v. *Zutavern,* 53 Neb. 604, 74 N. W. 64; *Mahoney* v. *Mahoney,* 59 Minn. 347, 61 N. W. 334; *Daniels* v. *Morris,* 54 Iowa, 369, 6 N. W. 532, 41 Kan. 342; *Moore* v. *Bradford,* 70 Miss. 70, 11 So. 639; *Nunn* v. *Paige,* 135 Am. State Reports——; *Tyler* v. *Tyler,* 99 Ky. 31, 34 S. W. 898; *Menzie* v. *Anderson,* 65 Ind. 239; *Conrad* v. *Everich,* 50 Ohio St. 476, 35 N. E. 58; *Coffman* v. *Finny,* 65 Ohio St. 61, 61 N. E. 155; See

also *Hamlin* v. *Bevins*, 7 Ohio 161; *Stoy* v. *Stoy*, 41 N. L.
Eq. 370, 2 Atl. 638, 7 Atl. 625.

And it has been held although an application for ali-
mony does not specifially describe any property of the
husband, the judgment or decree granting the application
has the lien of an ordinary general judgment for money.
*Coulter* v. *Lumpkin*, 94 Ga. 225, 21 S. E. 4617; *Bland* v.
*Putman*, 32 So. 616 (Ala); *Porter* v. *Harrison*, 24 So.
302; *Birch* v. *Atchison*, 82 Ky. 585; *Mounger* v. *Gandy*,
69 So. 817; *Buffalo Savings Bank* v. *Hunt*, 118 N. Y. S.
1021; *Davis* v. *Andrew*, 30 Vt. 679; *Smith* v. *Bunn*, 75 So.
559; *King* v. *Miller*, 10 Wash. 274, 38 Pac. 1020; *Gaston*
v. *Gaston*, 114 Calif. 542, 55 Am. St. Rep. 86, 102 A. S.
R. 704; *Wetmore* v. *Wetmore*, 149 N. Y. 520; *Wightman*
v. *Wightman*, 45 Ill. 174; *Benson* v. *Aitken*, 17 Cal. 163;
31 Wash. 397, 62 L. R. A. 974, and notes; Bishop, Mars
& Div. (6 Ed.), sec. 430; *Fisher* v. *Fisher*, 32 Iowa, 20;
*Barrett* v. *Barrett*, 41 N. J. Eq. 139, 3 Atl. 689; *Ryer* v.
*Ryer*, 67 How. Pr., 369.

In the case of *Ex rel Brown*, above cited, (62 L. T. A.)
at page 981, says: "While the appellant, under the laws
of this state may, after the decree of divorce, legally
remarry, the fact of a subsequent remarriage cannot
relieve him of the obligation fixed by the decree."

But before his second marriage, Alice Jackson had
placed her judgment of record in the office of the circuit
clerk on the judgment roll, where it was notice to the
world, and a valid lien upon whatever lands or property
Lindsey Jackson might own in the country. *Trowbridge*
v. *Spinning* (Wash.), 83 A. S. R. 817; *Sapp* v. *Wightman*,
103 Ill. 150; *Frakes* v. *Brown*, 2 Blackf. 295; *Tyler* v.
*Tyler*, 99 Ky. 31; *Dufrene* v. *Johnson*, 60 Neb. 18; *Arring-
ton*, 92 Am. St. R. 769; *Conrad* v. *Everich* (Ohio), 40 Am.
St. R. 684; Secs. 819-822, Code 1906. *Scire facias* was
not necessary to revive the judgment because no execu-
tion was issued thereon within a year and day after its
rendition, and execution was lawfully issued without
such revival. Sec. 824, Code 1906. The decree had the

force, operation and effect of judgment at law in the circuit court. Sec. 644 Code 1906. The decree having been recorded in the judgment roll in the proper office, the circuit clerk properly issued execution thereon. Sec. 3979, Code 1906; *Buffalo Sav. Bank* v. *Hunt,* et al., 118 N. Y. S. 1021.

Further discussion is unnecessary. The report of the referee should be confirmed with costs of two motions, for fees and other necessary and proper disbursements cf the claimant, Anna K. Matteson.

We respectfully submit that the decree of. the chancellor should be affirmed.

Etheridge, J., delivered the opinion of the court.

Lindsey Jackson, the appellant, a colored man living in Bolivar county, Miss., acquired forty acres of land upon which he lived and which he cultivated. He had a wife and three children. His wife died, and he married the second time; but the second venture in matrimony proved to be unfortunate and unsatisfactory to spouse No. 2, who sued for and obtained a divorce in the chancery court of that county, and as a part of the divorce proceeding was allowed alimony at the rate of five dollars per month and an attorney's fee of seventy dollars. The decree and the pleadings in the divorce case did not refer to the land, nor was any lien enforced against the land by virtue of the decree on its face; the decree being simply a straight judgment for such amounts, without describing any property or containing any provision that it should be a lien on the homestead of the appellant. This. divorce was obtained in the fall of 1908; the appellant having at that time three children by his first wife, one of whom subsequently married, but two of whom still lived with Lindsey Jackson and were dependent upon him for support. There seems to have been no effort to collect the judgment, further than a small payment on it shortly after it was made until 1913. In the winter-

of 1908 and 1909 Lindsey Jackson became afflicted to such an extent that he was unable to perform manual labor. The affliction seems to have been rheumatism, and its possible duration could not be told. In this condition Jackson sought to rent or lease a portion of his place to certain of his neighbors for one or two years, but was unable to make a lease or to rent the land, or a part of it, for such length of time. One of the neighbors proposed to rent the place for a period of five years and pay one hundred and sixty dollars per annum therefor. The appellant, being unable to lease it and unable to work, made a lease for five years and moved on another place with some relatives, taking his children with him. This condition existed in 1913, when an execution was issued on the judgment for two hundred and twenty dollars and costs. The land was levied upon and sold without Jackson's knowledge or consent, the sale being in June, 1913, and at the time of the sale the tenant of Jackson was then in possession occupying the land as such. About October following the execution sale the claimants of the execution sale went to the tenant of Jackson, informed him that the land had been sold, and demanded possession, offering to permit the tenant to gather his crops and use the outhouses and barns, but demanding possession of the dwelling house. The tenant gave possession of the dwelling house, and when Jackson learned of this fact he moved back in the house, after advising with an attorney. But the purchasers of the land went upon the premises, ordered him off, and removed his effects from the house into the public road, whereupon Jackson filed suit to cancel the execution deed, claiming the place as his homestead. It appears that in the spring of 1909 Jackson got better and was able to do some work, and that he sought to rescind the lease, offering the lessee one hundred dollars as an inducement to surrender which the lessee refused to do. Subsequent to this, and before the execution, other parties tried to lease the place for additional time, and some to

buy the property; but Jackson refused to do either, saying at the time that he intended to return as speedily as he could get possession of the property.

The question arises: First, had Jackson abandoned his homestead? And, second, if not, was the land subject to execution because the judgment was for alimony? It is well settled in this state that the homestead laws are construed liberally, and favorably to the debtor. The intention of the exemption laws is to enable the debtor to earn a living and create the means with which to pay debts, and to prevent hardships and suffering of families growing out of the improvident contracts of the head of the family, incurring debts. Early in the history of this state the rule was laid down that the homestead laws would be construed liberally for the exemptionist, and that an abandonment would not exist unless it was clear from the proof that the exemptionist had moved from the homestead with the intention of not returning. In this case the court said:

"We are of the opinion that it would be a harsh rule to enforce qualifying words (of the statute) according to their literal import. There must be exceptional cases. . . . Temporary absence, while traveling or visiting would most certainly not be held a forfeiture of the benefits of the exemption. The case before us is little else. So temporary residence in town for church and shool purposes, leaving the homestead in charge of a tenant or overseer, still retaining the home, with an intention of returning there, ought not to be held an abandonment of the homestead right. The courts of Illinois, whose statute of exemption is in precisely the language of our law of 1857, have held that the occupancy required by the statute may be by tenants. . . . To require the actual, literal, continuous, physical occupation of the homestead by some one or more of the family would turn a humane and beneficent law into one of imprisonment and punishment. It would subject the homestead, provided by a wise and liberal policy, to the casualties of life,

and the chances of unforeseen accidents; it would require of the family the precision of military regulations, and would demand that endless 'watch and ward,' which the law could never have contemplated. . . . We are of the opinion that the waiver or forfeiture of the homestead right should be declared only upon clear and decisive proof of an intention totally to relinquish and abandon such right, accompanied by removal from the premises, and that it ought clearly, and beyond all reasonable ground of dispute, to appear, that the abandonment was with an intention not to return and claim the exemption. A doubtful and mixed case, say the authorities, will not avail to cut off the right. . . . The homestead exemption is founded on a sound, public policy, combining in its support a variety of substantial reasons.''

In the case of *Gilmore* v. *Brown et al.*, 93 Miss. 63, 46 So. 840, the doctrine is laid down that homestead exemption laws are to be liberally construed in favor of exemptionists, and in this case it was held that the fact that the owner of a country homestead voted and held office in a village to which his removal was claimed to have been temporary was not conclusive evidence of the abandonment of the homestead. It was there held that the owner of a country homestead may purchase a dwelling house in a village and move his family thereto for the purpose of educating his children, and that his qualifying as a municipal elector and holding a municipal office without forfeiting his right to claim his country home as exempt, if he keeps actual possession of it by any person or by some member of his family, cultivates it every year, and never ceases to claim it as his homestead, and always intends to return to it whenever the object for which he has removed to the village has been accomplished. In the case of *Tiser* v. *McCain,* 74 So. 660, it was held that a widow of a deceased exemptionist did not lose her right to the homestead exemption by a temporary removal to another county, where she lived temporarily with relatives, occasioned by the inconvenience of living upon the

homestead on account of having no one to stay with her on the premises, a tenant being in possession of the homestead.

Section 2157 of the Code of 1906 provides that, when the debtor shall cease to reside on the homestead, it shall be liable to his debts, unless his removal be temporary, by reason of some casualty or necessity, and with the purpose of speedily reoccupying it as soon as the cause of his absence can be removed. In the present case there was a necessity for Jackson to leave his homestead, under the conditions which surrounded him at that time. He had a family to support, and was unable at the time to perform physical labor, and it was necessary to use the place in some way to earn an income with which to support his family. The proof shows that he could only do this at that time by leasing his place out for the length of time that he did. He tried to secure more favorable conditions, and was unable to do so. The proof shows that he was anxious to return as soon as his physical condition permitted and that he did all in his power to protect and preserve his homestead right, and it clearly appears that he never intended to abandon his homestead. We think, therefore, there was no abandonment of the homestead within the meaning of the statute.

The next question is whether the homestead is subject to execution, being a debt or claim for alimony. Section 2156 of the Code provides that property shall not be exempt from execution in the following cases:

"When the purchase money thereof forms, in whole or in part, the debt upon which the judgment is founded; but if the judgment be not in whole for money purchase, and the execution be levied on property exempt but for the provisions hereof, and the exemptionist pay or tender the amount of purchase money included in the judgment before sale, the property shall be released; nor shall any property be exempt from sale for non-payment of taxes or assessments, or for any labor done thereon, or mate-

rials furnished therefor, or when the judgment is for labor performed or upon a forfeited recognizance or bail bond.''

We think the statute having named the cases in which the property was not exempt that no further exceptions will be made by the court. It seems to be the general rule that a homestead is not subject to the demand for alimony unless there are no children. *Biffle* v. *Pullan,* 114 Mo. 50, 21 S. W. 450; *Stanley* v. *Sullivan,* 71 Wis. 585, 37 N. W. 801, 5 Am. St. Rep. 246; *Ex parte Silvia,* 123 Cal. 293, 55 Pac. 988, 69 Am. St. Rep. 58; *Byers* v. *Byers,* 21 Iowa, 268. Our own court, in the case of *Moseley* v. *Larson,* 86 Miss. 288, 38 So. 234, held that the decree might be made a lien upon the homestead, if ordered by the court in its judgment granting the alimony. We think that the pleadings must at least describe the homestead, and make proper allegations of facts showing the necessity for declaring a lien, so that the defendant may know at the time of the suit that his exempt property would be claimed to satisfy the debt, and to make proper showing as to why such lien should not be declared.

In view of what we have said, the judgment must be reversed. Judgment is accordingly reversed, and the cause remanded, to be proceeded with in accordance with this opinion.

*Reversed and remanded.*