773 So.2d 355 (2000)
Fred L. McMILLAN, Appellant,
v.
Giorgio M. ARU and his wife, Jan Radakovich Aru, Appellees.
No. 1999-CA-00018-COA.
Court of Appeals of Mississippi.
April 18, 2000.
Rehearing Denied August 29, 2000.
Certiorari Denied December 7, 2000.
*357 James Lawton Robertson, Paul E. Barnes, Jackson, Attorneys for Appellant.
James E. Lambert, Jackson, Attorney for Appellees.
BEFORE SOUTHWICK, P.J., PAYNE, AND THOMAS, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. This is a suit between the buyer of a residence and a judgment creditor of the seller. As the sellers' homestead, the residence had been exempt from seizure and sale. Shortly after the buyer's purchase but before the instrument was placed of record, the judgment creditor had the sheriff seize the property and schedule an execution sale. The Madison County Chancery Court enjoined the sheriff's sale and found that even after the conveyance, the property remained exempt.
¶ 2. On appeal the judgment creditor asks fundamental questions about the interplay of different sections of the homestead exemption, judgment lien, and recordation statutes. We find the questions to be insightful but the creditor's suggested answers to be unconvincing. The able chancellor kept his focus on the proper issue, which was that the judgment debtors maintained the property as homestead until they made a bona fide conveyance to a new owner. We affirm.

FACTS
¶ 3. In 1994, Fred McMillan purchased a home adjacent to the Barnett Reservoir from Neil and Julia Harrison. For clarity, we point out that this home is not the one at the center of the appellate homestead issues. McMillan soon noticed the effects of clay deposits beneath the foundation of his home. The expansion and contraction of those deposits caused severe damage to the structure. McMillan brought suit against the Harrisons in Madison County Circuit Court and a final judgment was entered in his favor for approximately $320,000. McMillan enrolled his judgment in the office of the Madison County Circuit Clerk on January 20, 1998.
¶ 4. On the date that this judgment was enrolled, the builders, Neil and Julia Harrison, lived in a Madison County home for which record title was solely in Mrs. Harrison. Since this home was on land owned by the Pearl River Valley Water Supply District as part of the Ross Barnett Reservoir development, the home-owners only had a lease on the land. On May 6, 1996, Julia Harrison had entered into a lease assignment agreement with the District. The lease was to expire on October 31, 2050. The Harrisons built a home on the land and resided in it until they sold to Giorgio and Jan Aru in 1998. The Harrisons filed a homestead declaration on this property in 1998. The home was encumbered by a first deed of trust held by Crestar Mortgage Corporation in the amount of $344,000 and by a second deed of trust held by American General Finance securing the then outstanding balance of $48,908. The Harrisons later borrowed another $25,000 from American General, thereby increasing the second mortgage indebtedness to $74,801.55. All parties agree that the McMillan's judgment lien was subordinate to these mortgage debts.
¶ 5. On July 31, 1998, the Harrisons executed an assignment of their leasehold to the Arus for $430,000. At closing, the prior lenders were paid in full. The purchase and sale recognized the issue of the McMillan judgment lien. First American Title Insurance Company issued a policy that protected against loss to the lender or to the buyers arising from the lien.
¶ 6. There is no evidence as to the precise date that the Harrisons moved out of their home. The McMillans were said to have learned of a move in "July," while the actual closing on the transaction was on July 31. The McMillans had the land records examined, revealing that Julia Harrison continued to have record title to the property since the assignment of lease was still being processed by the lessor district and had not yet been recorded. On August *358 14, 1998, McMillan filed a motion in the same Madison County Circuit Court suit in which the judgment against the Harrisons had been obtained in January. The motion sought a writ of execution for the seizure of all the Harrisons' property including the allegedly abandoned homestead. The clerk issued the writ and the sheriff seized the former Harrison residence on August 19. The assignment of lease to the Arus was recorded on August 26, 1998. An execution sale was scheduled for September 11, 1998.
¶ 7. On August 28, 1998, the Arus filed suit in Madison County Chancery Court to enjoin the execution sale. Following an evidentiary hearing, a preliminary injunction was issued halting the sale. The preliminary injunction was made permanent on December 11, 1998, when the chancellor entered an order granting summary judgment in favor of the Arus.

DISCUSSION
¶ 8. As just noted, the chancellor entered a summary judgment. There had been an evidentiary hearing as to some issues. The parties agree that the issues that face us are largely though not entirely legal ones. To the extent the court decided on the basis of the absence of disputes of material fact, that is a conclusion that we must review anew by examining all pleadings, discovery responses, and evidence submitted on summary judgment or at the hearing. M.R.C.P. 56; Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss.1983). The proper interpretation of the legal principles involved is also our task de novo.
¶ 9. The appellant's brief states that eleven questions are raised by the proceedings. The brief, though, is not structured by the eleven questions. We find that our discussion of the issues will be clearer, though clear it still may not be, if we also do not organize our explanation in the order of the eleven questions. Each individual criticism will ultimately be addressed, however.

I. The Statutes
¶ 10. There are several statutes that are central to the rights of the parties. How these statutes work together is what separates the parties. We first identify and review the principal statutes.

A. The Homestead Exemption
¶ 11. The Harrisons claimed as homestead property the residence at issue in this case. The significance of that claim first is seen in a statute that permits a citizen "to hold exempt from seizure or sale, under execution or attachment, the land and buildings owned and occupied as a residence," to a limit of 160 acres and a value of $75,000.[1] Miss.Code Ann. § 85-3-21 (Rev.1999). That dollar limit is a net value, as "existing encumbrances" are to be deducted from "the actual value of such land and buildings." Id. What the property is exempted from is seizure and sale, not from the attachment to the property of a validly created judgment lien. In other words, a lien exists and attaches but it avails the holder nothing unless something occurs to the exemption. According to the McMillan judgment creditor, "something" did happen. We will address that argument later.

B. Loss of homestead exemption
¶ 12. One statute provides that the declaration of a specific tract as homestead binds the declarant, spouse, and creditors until a new declaration is executed that nullifies the former one. Miss.Code Ann. § 85-3-27 (Rev.1999). Another statute states that the homestead exemption is lost when the owner "shall cease to reside on his homestead," unless the removal is temporary, is caused by some necessity, and an intent exists speedily to return. *359 Miss.Code Ann. § 85-3-43 (Rev.1999). The need to continue residing on the property does not apply once a homestead owner reaches the age of 60. Miss.Code Ann. § 85-3-23.

C. Allotment of homestead
¶ 13. We have mentioned that there are limits of quantity and value to homestead property. A declaration may claim property that exceeds those limits, but the legislature has provided for a means to rein in such overly-ambitious declarations. If "the debtor has made a valid homestead declaration," but the declaration exceeds 160 acres or a net value of $75,000, then three "householders or freeholders" shall determine what part of the overall property should be set off as homestead. Miss. Code Ann. §§ 85-3-35 & 85-3-37 (Rev. 1999). If these individuals determine that there is a surplus, the debt up to the amount of the surplus must be paid by the homestead debtor within 60 days; if it is not, the sale of the homestead shall proceed. Miss.Code Ann. § 85-3-37. The statute provides that the property is to be advertised and sold if the premises "shall bring a greater sum than the exempt value...." Id. This appears to mean that only if the highest actual bid is more than $75,000 above the amount of the various encumbrances will the sale actually occur.
¶ 14. This provides a double protection for the exempt homestead. The first is that the estimate by freeholders must show an excess value in the homestead; if not, the attempt to sell never occurs. The second is that the proceeds from the actual highest bid at a sheriffs sale must provide an excess; else the highest bid is rejected and the homestead owner continues to enjoy the property.
¶ 15. One of the arguments made by the judgment creditor is that the sheriffs sale must be allowed to proceed regardless of the presale estimates of fair market value, since only the actual bids can reliably determine current market value. That is not the approach of the statute:
"Our statutes forbid the sale under execution or attachment of the exempt homestead, unless, by its sale, something could be realized for the substantial benefit of the execution creditor. Under the admitted facts of this case, it would be impossible for a sale to be of any advantage to the appellants. On the contrary, they could only incur additional costs, while the attempted sale and conveyance would be a gross wrong upon the appellee, by clouding the title to her homestead."
Dogan v. Cooley, 184 Miss. 106, 185 So. 783, 790 (1939), quoting Koen v. Brill, 75 Miss. 870, 871-72, 23 So. 481 (1898). In Koen, the homestead was a "residence and lot ... of the value of $6,000." Id. There were existing encumbrances of $4,400 that were superior to the judgment lien, while the amount of the homestead exemption was $3,000. Id.; 1892 Miss.Code § 1973. The court held that the sheriffs sale should be enjoined for the reasons quoted above. This means that unless designated freeholders first determine that there is a surplus above the liens and the exemption, there is no advertisement of a sale for any reason, including to test the fair market value.
¶ 16. It is true that three "house-holders or freeholders" did not make the estimate and instead that was done in chancery court. That was because these issues were tried as part of an injunction suit to halt the execution sale. This was also the approach taken by the homestead owner in Koen. Relief may be sought in a court of equity to stop execution on a judgment if there is no other adequate remedy. Moseley v. Southern Colonel Mobile Homes, Inc., 375 So.2d 407, 410 (Miss.1979). The Arus were not parties to the circuit court action that led to the judgment against the Harrisons and thus the Arus properly turned to chancery court. Once the validity of proceeding with the sale was before the chancellor, *360 the issues necessary for that determination were before him as well. There was no motion or argument by either side to bring in the freeholders. The judgment creditor's attorney conceded at a hearing that the Harrisons did not have $75,000 equity in the home. The argument below and here was that the market should set the price by a sale being conducted, not that freeholders should somehow have made an estimate in chancery court. If there is a procedural defect of failing to use freeholders, and we state no view, it is waived.[2]
¶ 17. A somewhat separate issue is also raised based on the fact that once the closing occurred on July 31, 1998, the other encumbrances were released. In McMillan's view, since the Harrisons still had record title until the instrument of conveyance was recorded several weeks later and at that time the mortgages burdening the Harrison's interest had been canceled, his judgment lien was effective. We discuss that issue when we analyze whether recording the instrument of conveyance is relevant to the homestead exemption. See section II. B. below.

D. Judgment Liens
¶ 18. Intersecting in this case with the statutes regarding homestead interests are the ones involving judgment liens. McMillan received a judgment against the Harrisons in circuit court as a result of his complaint regarding the construction of his own home. That judgment was enrolled and became a lien upon all the Harrisons' property in the county. Miss.Code Ann. § 11-7-191 (Supp.1999). Its priority against other liens and claims dates from its enrollment. Id.
¶ 19. We earlier discussed that the homestead statutes prevent levy and execution on exempt property. Miss.Code Ann. § 85-3-21. What we did not raise then is that a specific statute permits homestead owners to sell their exempt property while maintaining the exemption. Since this statute is central to our resolution of the issues, we quote it in full:
The exempt property, real or personal, disposed of by the owner, shall not by disposal become liable to the debts of the owner; and any debtor leaving this state may take with him his personal property which is exempt from execution.
Miss.Code Ann. § 85-3-49 (Rev.1999).
¶ 20. This statute is central because whether the property was "disposed of" while it was still exempt from the judgment lien resolves this case.

E. Recordation statutes
¶ 21. A conveyance of land "shall not be good against ... any creditor" until it is recorded. Miss.Code Ann. § 89-5-1 (Rev. 1999). This has been interpreted to mean creditors "without notice" even though the statute literally only says purchasers without notice and creditors. Id.; see also Miss.Code Ann. § 89-5-5 (Rev 1999)(priority of instruments dates from its filing with chancery clerk "as to all creditors and subsequent purchasers ... without notice"). The supreme court has held that an unrecorded deed is without effect as to creditors "who acquire their rights subsequent to the execution of the deed in good faith for value without notice and [before] the date that such deed is filed for record." Craig v. Osborn, 134 Miss. 323, 98 So. 598, 600 (1923). This is because "the thing that the Legislature intended to accomplish was the protection of the person buying or securing a lien in good faith without notice." Id.

II. Termination of homestead exemption
¶ 22. Having discussed most of the relevant statutes, we now turn to weaving their strands together into the proper resolution of the appeal.

*361 A. Status of lien of unsatisfied judgment after sale of homestead

¶ 23. We first describe the effects of a sale in which the reasonable price paid for the homestead provides no surplus above the amount of the homestead exemption and prior encumbrances. We label this a "legitimate no-surplus sale." The statute and case law indicate that the property will no longer be affected by the lien. Miss.Code Ann. § 85-3-49; De Bardelleben Coal Corp. v. Parker, 164 Miss. 728, 145 So. 341 (1933) (on suggestion of error). However, McMillan asserts that the judgment lien remains attached to the property and "can be discharged only upon payment in full"; that is an unprecedented reading of the statute regarding the disposal of a homestead.
¶ 24. The case that McMillan most forcefully presents on this issue involved the foreclosure of a second mortgage. Hall v. Panola County Bank, 412 So.2d 238 (Miss. 1982). Two judgment liens had attached after the first mortgage and prior to the second mortgage. The price bid to foreclose the junior mortgage implicitly was reduced from market value at least by the amount of the first mortgage and probably by the debt secured by the judgment liens since these were senior to the mortgage being foreclosed. Id. at 240-41. Even so, the bid was more than the amount of the homestead exemption. This meant that there was equity in the property beyond the homestead exemption amount and the encumbrances senior to the judgment lien. The judgment had to be satisfied. Id. at 241. McMillan would make of this case an endlessly available sword for a vigilant judgment lien creditor to use against a buyer of homestead, usable against that buyer at any later time that there is surplus value in the property. Instead, it is a sword usable only when the creditor can prove that there was enough equity in the property at the time of sale to satisfy encumbrances senior to the judgment lien and still provide the amount of the exemption.[3] That was not the case at the time that this property was sold to the Arus.
¶ 25. We find no precedent suggesting that a buyer of another's homestead remains perpetually exposed to paying his seller's lien-secured debts. Instead, a legitimate no-surplus sale permanently cancels the judgment lien as to the homestead. McMillan's interpretation destroys the benefit of the homestead disposal statute. That McMillan would wish for that destruction may be understandable, but his construction is unreasonable. If the property remains burdened by the lien after sale, the homestead seller will directly or indirectly have to satisfy the judgment before the sale. To the contrary, after a proper sale to a new owner, the Hall sword must remain forever sheathed.
¶ 26. McMillan argues that there is inherent potential for fraud in such rules, namely, that an unreasonably low sales price will make it appear that there is insufficient equity. That may be, but no fraud is shown here. The specter of it arising as to other property in the future does not change the result in our case but only suggests that a future creditor can make that claim.
¶ 27. In summary, then, the statute for disposal of homestead prevents a lien from following the property after a legitimate no-surplus sale.
¶ 28. The second result of a proper sale is that the proceeds "are exempt in all circumstances. The exemption is not dependent, as in some other states, on the vendor's continuing to be a house-keeper, or on his intention to acquire another homestead, or on the intent with which he keeps the proceeds." Davis v. Lammons, 246 Miss. 624, 151 So.2d 907, 909-10 (1963); accord, Dogan, 185 So. at 790. That means that the money received *362 by various parties at the closing on the sale, including any money that might have been paid to the sellers, cannot become subject to the lien.

B. Delay in recording a homestead deed
¶ 29. As a result of the foregoing, unless there was a defect in conforming to the necessary means to dispose of homestead property while retaining the exemption, the Harrisons' former residence is beyond McMillan's reach. The alleged defect is the failure for almost a month after the closing to file the instrument of conveyance for record. By then the Harrisons had long previously vacated the home. The argument is that the property must remain occupied as homestead by the sellers until the deed is recorded and becomes notice to creditors.
¶ 30. The most analogous precedent stated this:
Thus we have a case where a man and wife, for a number of years, had been occupying certain property as their homestead. On December 11, 1968, they purchased other property on West Capitol Street with the present idea of moving there and making it their permanent home and on or about December 18 moved into that property. Section 328, Mississippi Code 1942 Annotated (1956) [now § 85-3-43] provides under what conditions one may cease to reside on his homestead and not constitute an abandonment. It reads: "Whenever the debtor shall cease to reside on his homestead, it shall be liable to his debts, unless his removal be temporary, by reason of some casualty or necessity, and with the purpose of speedily reoccupying it as soon as the cause of his absence can be removed."
Patterson v. Adams, 245 So.2d 13, 14 (Miss.1971). The homestead owners moved on December 18 but did not sell their by-then abandoned old house until December 31. The court found that the 13 day gap permitted the judgment lien to become effective:
In this case the Adams had purchased new property, vacated the old homestead, and moved into the new property. The removal was approximately two weeks before the sale of their old property. The statute exempts the proceeds of the sale of exempt property. However, in order to obtain this exemption, such proceeds must come from the sale of property which, at the time of sale, is actually a homestead meeting the requirements of the statute.
Id. What cannot be discerned from the opinion is whether December 31 was the date of a contract to sale, of closing and the execution of the deed, or of the deed's filing for record. The opinion in a closely related case is also silent on those matters. Patterson v. Adams, 245 So.2d 194 (Miss. 1971). Therefore we examined the record and briefs on both Patterson appeals to determine what the supreme court knew but left unsaid about those questions.[4]
¶ 31. The Patterson record provides no evidence of the date on which the buyer agreed to purchase the Adams homestead. Sometime before December 31 the buyer gave $100 earnest money. The attorney for the seller was contacted after December 11 and before December 31 to prepare the deed, which was to be rushed so that the buyer could own the property prior to January 1 and claim it as her homestead for the next year. The closing and execution of the deed occurred on December 31. The buyer turned the electricity and gas back on that day in order to further her claim that this was her homestead. The deed was not filed until January 6 and not recorded until January 7.
¶ 32. January 6, the date on which notice to third parties became available, is never mentioned in the opinion. The only dates that the court deemed important in whether the sellers abandoned the homestead *363 prior to its "disposal" were December 18 and December 31. Patterson, 245 So.2d at 14. This implicitly makes December 31, the day of execution of the deed, the important date for determining when disposal occurred.
¶ 33. We acknowledge that the gap between the date of the deed and its filing for record was insignificant in Patterson. Both dates were after the departure of the sellers from the homestead and the commencement of their residence in a new home. Even so, the fact that it was the date of execution of the deed and not its recordation that is referenced in the opinion is instructive. We will examine which date seems more consistent with the language and purpose of the statutes.
¶ 34. What is important to all parties is that the debtor/former owner no longer have a claim to the property. Even without recording, a deed is completely effective between the buyer and seller. It is significant that the statute on homestead "disposal" makes no reference to recording. It merely states that when the exempt property is "disposed of by the owner," the property is not subject to the former owner's debts. Id.
¶ 35. The creditor nonetheless argues that this statute should be interpreted in light of the statutory obligations to record instruments before they become binding on third parties. This would mean that though the home is exempt until sold, it becomes subject to the judgment lien if the buyer fails to take immediate steps after the sale to show that the debtor no longer owns it. McMillan suggests that if the instrument is filed quite promptly, the exemption continues. In fact, though, if recording is controlling, prompt recording would not protect the homestead exemption either.
¶ 36. From one perspective, this argument appears irrelevant. If the seller's occupancy of the property as homestead until the deed is filed for record is a prerequisite to statutory "disposal," then whether between the deed's signing and its filing there was a delay of minutes or months would not be an issue. Still, there is a legitimate question of whether the seller, in the status of a holdover tenant, can maintain a homestead on property in which he no longer has an assignable interest. Jones v. Lamensdorf, 175 Miss. 565, 576, 167 So. 624, 626 (1936). If he cannot, this would indeed be the best of all worlds for a creditoras soon as the deed is executed the seller can no longer claim the property as homestead, but unless the deed is filed immediately the property is no longer exempt from execution. We consequently discuss the issue on the terms presented.
¶ 37. Generally, an unrecorded deed is without effect as to creditors "who acquire their rights subsequent to the execution of the deed in good faith for value without notice and [before] the date that such deed is filed for record." Craig v. Osborn, 134 Miss. 323, 98 So. 598, 600 (1923). This is because "the thing that the Legislature intended to accomplish was the protection of the person buying or securing a lien in good faith without notice." Id. In our situation the lien preexists the new instrument. If the mere act of executing a deed causes the previously recorded but powerless lien to be activated, there simply is no manner by which a deed could be filed quickly enough such that it predates the invigoration of the lien. Perhaps the deed conveying homestead property could be signed while it is in the hand of a deputy chancery clerk, such that it is in the act of being filed while it is being signed. We do not care to examine the metaphysics of whether even that would make the conveyance at least equal in time to the activation of the prior lien.
¶ 38. McMillan's attorney does not suggest such contortions are necessary, but only that the instrument of conveyance needs to be filed within minutes. Yet the concession is at best an astute diversion. The priority either dates from filing for record or it does not. If the absence of *364 any time gap between execution and filing is the key, then all conveyances of homestead property will become subject to preexisting judgment and other liens that were in abeyance because of the exemption.
¶ 39. To be distinguished from these principles is the rule that a lien is effective if it is filed after the debtor's execution but prior to the filing of a deed conveying nonexempt property. Martin v. Adams Mercantile Co., 203 Miss. 177, 180, 33 So.2d 633, 634 (1948). Once a sheriff seizes property, filing a prior deed does not halt an execution sale. In Martin, the debtor owned nonexempt land that was seized by the sheriff. Id. The debtor had conveyed the property to a third party a month earlier, but the deed was not recorded until approximately one hour after the sheriffs action. That late filing caused the property to be as subject to the sheriffs sale for the former owner's debts as if it were still owned by the debtor at the time of seizure. Id. How that rule applies to a lien first filed after execution of a deed on homestead but before its recording is not before us.
¶ 40. What is before us is a judgment lien recorded long before execution of a deed. Constructive notice rules protect parties without notice from being harmed by an unrecorded act. In Martin, the lienholder relying solely on the records believed that the lien debtor still owned the property and the creditor's lien was effective. In our case, relying solely on the records, a lienholder would believe that the debtor still owned the property and his lien was ineffective. What McMillan wants is to be subject to the benefits of an unrecorded act, not to be free from the harm of an unrecorded act. The beneficial unrecorded act is the departure of the former homestead owner from the property; the burden of the other as yet unrecorded act of executing a deed is something McMillan would evade.
¶ 41. We reject the argument that a lien that predates the sale of a homestead becomes effective unless the seller stays in residence until after the deed is recorded. Once the debtor has executed a deed, there is neither statutory command nor equitable basis for the creditor to gain some advantage because the debtor then moves prior to the filing of the instrument. These statutes should be broadly construed in favor of the debtor-exemptionist, not narrowly read to trap him. Newton County Bank v. Jones, 299 So.2d 215, 219 (Miss.1974).
¶ 42. Subject to the requirements discussed in this opinion, homestead property is exempt from seizure under a lien filed prior to execution of a deed. After that time, there is nothing left to seize.

C. Minimum use of homestead until time of sale
¶ 43. After holding that the execution of an instrument of conveyance is "disposal" under section 85-3-49, we finally look at what the homestead seller has to do in order to maintain the exemption up until the time of execution. As discussed regarding Patterson, the seller cannot move out two weeks before the deed is executed and establish a homestead elsewhere: "in order for the property not to be subject to a judgment lien, it must be the homestead at the time of the sale." Patterson, 245 So.2d at 15. Must the seller remain in residence until the moment of the execution of the deed?
¶ 44. In the present case, the chancellor found that the residence "was the homestead property of the Harrison defendants, at the time they sold said property to Plaintiffs." McMillan admits that "[n]o one disputes that the Harrisons moved out of their homestead on approximately July 31, 1998." An affidavit was executed on July 31, 1998, the day of sale, in which the Harrisons asserted that the "property has been occupied by us as our primary residence and that we are entitled to any exemptions and privileges afforded us by *365 our homestead exemption." Thus, the only evidence is that the Harrisons remained on the premises until about the time that the instrument was executed.
¶ 45. The supreme court has held that the homestead has been abandoned if the owner moves with the intention of never returning. Jackson v. Coleman, 115 Miss. 535, 76 So. 545 (1917). This was repeated as a principle in Patterson, in which the sellers had moved from the homestead 13 days before the conveyance and had begun residing in another home. Patterson, 245 So.2d at 14-15. The statute that speaks to temporary absences caused by necessity, in which the homestead owner intends to return, factually is inapplicable. Miss. Code Ann. § 85-3-43.
¶ 46. To interpret a statute, a reasonable and common sense view should apply to the extent the language permits. West v. State, 725 So.2d 872, 878 (Miss. 1998). Any sale of a homestead is going to require that the former homestead owner vacate the property. That may occur over several days prior to signing the deed, since absent an agreement the seller after executing a deed has no further right to be on the property. On the other hand, the rights of creditors are statutorily recognized and are not to be considered mere trifles. As Patterson indicated, the sellers' departure from their first homestead and setting up a new home elsewhere prior to the conveyance of that first home causes the exemption to be lost prior to the disposal of the homestead.
¶ 47. Therefore, owners who sell a homestead that has judgment liens filed against it, must not by the date of sale have established a new homestead. If the homestead owner has not abandoned the old home and made a full-time residence at a new one prior to the date that a deed is executed, the exemption still exists. This interpretation would mean that the homestead exemption statute countenances the normal process of selling property, with extra care needing to be shown by the seller not to establish a new homestead until the time that the conveyance is made.
¶ 48. We defer suggesting what proof must be received. The creditor has made no claim factually or legally that the homestead exemption ended before the date of sale. He claimed that it ended after the sale because the conveyance was not immediately filed for record. We find that disposal of the property occurred while it was still subject to the homestead exemption.
¶ 49. THE JUDGMENT OF THE MADISON COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] Of course, if any part of the debt arises from purchase money, the property is not exempt from execution. Miss.Code Ann. § 85-3-47 (Rev.1999). Else a deed of trust securing the loan that permits the purchase of a residence would provide little security.
[2] A mechanism exists for seeking judicial review of the estimate and allotment made by freeholders. Miss.Code Ann. §§ 85-3-39 & 85-3-41 (Rev.1999). Those statutes became academic once the chancellor was presented the injunction suit.
[3] We have already discussed the rights of a judgment creditor to assert outside of the context of a sale that a debtor is claiming a homestead in which the equity is worth more than $75,000. See Section I.C. of this opinion.
[4] Record Group 32, Cause #'s 46,075 & 46,099, Miss. Dept. of Archives & History.